OLSNESS, Commissioner of Insurance of North Dakota, v. HOME INS. CO.

(Circuit Court of Appeals, Eighth Circuit. September 13, 1926.)

No. 6794.

1. **Injunction ⟺119—In suit to enjoin insurance commissioner's enforcement of order, denials in answer held insufficient to warrant refusal of decree for complainant (Const. Amend. 14).**

In suit to enjoin commissioner of insurance from enforcing order forbidding complainant and other union insurance companies from withdrawing their agents from mixed insurance agencies, as in violation of Const. Amend. 14, denials in answer held immaterial or futile, in face of order itself and stipulation of commission, and not ground for denial of complainant's motion for decree.

2. **Injunction ⟺109—In suit to enjoin insurance commissioner's enforcement of order, affirmative defense charging attempted monopoly held insufficient to warrant denial of motion for decree (Const. Amend. 14).**

In suit to enjoin insurance commissioner from enforcing order forbidding complainant and other union companies from withdrawing their agents from mixed insurance agencies, as in violation of Const. Amend. 14, affirmative defense that union companies by such course were attempting to monopolize insurance business of state held not ground for denial of motion for decree.

3. **Equity ⟺65(3)—In suit to enjoin insurance commissioner's enforcement of order, complainant's alleged violation of state trust laws held not to preclude relief on ground that he did not come with clean hands (Comp. Laws N. D. 1913, §§ 172, 9950, 9951, and section 4925, as amended by Laws N. D. Sp. Sess. 1919, c. 40).**

In suit to enjoin insurance commissioner's enforcement of order forbidding complainant and other union companies from withdrawing their agents from mixed insurance agencies, complainant's alleged violations of state trust laws, Comp. Laws N. D. §§ 9950, 9951, held not to preclude relief on ground that he did not come with clean hands, notwithstanding section 172 and section 4925, as amended by Laws N. D. Sp. Sess. 1919, c. 40.

4. **Equity ⟺65(3).**

The principle requiring complainant to come with clean hands denies him relief only when his inequity consists of wrongful acts or transactions, which raise the equity he seeks to enforce.

5. **Appeal and error ⟺883—Defendant in injunction suit, where decree was entered after striking out answer, held estopped to complain that no default was declared or order made that bill be taken pro confesso.**

In injunction suit, where decree for complainant was entered after striking out answer, defendant held estopped to complain that there was no default or order that bill be taken pro confesso, in view of stipulation filed and consent to hearing of motion without notice.

6. **Stipulations ⟺14(7).**

In suit to enjoin insurance commissioner's enforcement of order, objection that decree for complainant was entered without evidence being heard in support of allegations of bill held untenable, in view of defendant's stipulation.

7. **Appeal and error ⟺883.**

In suit to enjoin insurance commissioner's enforcement of order, defendant held estopped by stipulations filed to complain of alleged impropriety in determining validity of affirmative defenses on motion to strike out answer.

Appeal from the District Court of the United States for the District of North Dakota; Andrew Miller, Judge.

Suit by the Home Insurance Company against S. A. Olsness, as Commissioner of Insurance of the State of North Dakota. Decree for complainant, and defendant appeals. Affirmed.

George F. Shafer and John Thorpe, both of Bismarck, N. D., and Fred D. Silber, of Chicago, Ill., for appellant.

E. H. Hicks, of Chicago, Ill., and M. J. Doherty, of St. Paul, Minn., for appellee.

Before SANBORN, STONE and KENYON, Circuit Judges.

WALTER H. SANBORN, Circuit Judge. This is an appeal from a final decree of the court below by which it enjoined the defendant, the commissioner of insurance of the state of North Dakota, from enforcing his order of May 20, 1924, which forbade the complainant and other union insurance companies from separating or withdrawing their agents from the mixed insurance agencies in that state.

The material facts alleged by the complainant in its bill in equity here were that

it was a corporation of the state of New York; that it had been for many years and is engaged in the general business of insuring against losses in the states of this nation; that it was admitted and licensed to prosecute its general insurance business in the state of North Dakota when it became a state; that it has been carrying on that business in that state ever since and that on April 1, 1924, it was duly licensed to prosecute its business therein for the ensuing year; that when the order of the commissioner of May 20, 1924, was made, it had transacted in the year 1923 in the state of North Dakota insurance business aggregating in premiums more than $250,000, and that, if permitted, it would in 1924 transact an insurance business in that state aggregating more than $300,000 in premiums; that it had appointed more than 200 agents in that state to receive for it proposals for insurance, countersign and issue policies, receive premiums, consent to the transfer of policies, and attend to other duties of such agents; and that by contract between it and each of its agents his authority as its agent was subject to revocation by it at any time without notice, and he had the like right to terminate this agency at will.

Prior to the issue of the order of May 20, 1924, there were in the state of North Dakota two voluntary associations, one composed of managers of insurance companies who were members of the Western Insurance Bureau, and another voluntary association composed of managers of insurance companies, including the managers of the complainant, who were members of the union. The companies represented in the former organization are called bureau companies; those represented in the latter are called union companies. There were "mixed agencies." These were agencies representing certain companies whose managers were members of the Western Insurance Bureau and nonaffiliated companies whose managers belonged to neither of the two voluntary organizations. Some of the agents of the complainant had been conducting or been members of or been represented by mixed agencies. The complainant deemed it indispensable to its financial soundness, the security and protection of its business as an indemnifier and underwriter of risks, and the success of its business to require its agents and representatives in North Dakota to devote to its business their faithful and loyal services, undivided and unimpaired by their representation at the same time in the mixed agencies of competing companies whose interests and success were antagonistic to its own. It therefore had been and was the business policy of the complainant, whenever it believed it was not obtaining the best business results and the faithful and loyal services of its agents in mixed agencies, or otherwise, to terminate the agency of such agents who had theretofore conducted or were conducting mixed agencies, after giving them due and timely notice and permitting them to elect whether they would continue to represent it or would represent its competitor or competitors.

The order of the commissioner of May 20, 1924, was: "That further separation processes [separation of the agents of union companies from other agents in mixed agencies] cease forthwith, and all companies and interested persons or organizations are hereby called upon to bring about a restoration of the status quo ante, as regards mixed agencies in North Dakota." Another paragraph of the order reads:

"For the purpose of making this edict effective it is hereby declared and warning given that any company, person or organization violating same will do so at the peril of having their certificate of authority to do business in the state of North Dakota revocated. Any company whose license is so revocated, if reinstatement is desired, must take such steps by mandamus or otherwise as it may find available to compel this department to issue a license."

The complainant alleged in its bill in equity that the commissioner, unless enjoined by the court, would revoke its license to do business in North Dakota, institute criminal prosecutions against it and its representatives to recover thousands of dollars of claimed penalties, greatly decrease or destroy its good will and business in North Dakota, render worthless its agency plants in that state, and inflict other irreparable damages upon it, without lawful authority or due process of law, and in violation of its rights under the Fourteenth Amendment to the Constitution of the United States.

The defendant answered this bill on July 16, 1924. The parties filed a written stipulation, entered into on July 7, 1924, that this case should be brought on for trial and for final hearing on July 16, 1924. On July 16, 1924, the record reads:

"This cause coming on to be heard, pursuant to the stipulation between the parties filed herein, upon the bill of complaint and the answer of the defendant, and the complainant now moves to strike out the answer

of the defendant as insufficient, and the defendant consenting to such motion being brought on for hearing at this time without notice, and after hearing arguments of counsel and due consideration, it is ordered that the motion of the complainant to strike the answer of the defendant be granted.''

Thereupon the defendant elected to stand on its answer, the parties stipulated that the commissioner had caused his order of May 20, 1924, to .be served upon the complainant about that date, that he had never revoked it, that he had threatened and did then threaten to enforce and carry it out, and the court, after consideration of this stipulation and the pleadings, rendered its final decree, whereby it perpetually enjoined the commissioner from canceling or interfering in any way with complainant's certificate of authority to transact business in North Dakota which the commissioner had issued to it, from interfering in any way with its right to transact its business in North Dakota on account of its refusal to comply with the order of May 20, 1924, from interfering in any way with the right of the complainant to terminate its agency contracts at will in any mixed agencies, as, defined in the pleadings, with or without the consent of its agent or agents, and from in any way attempting to compel the complainant to restore the authority of any agent or agents in any mixed agency or agencies which complainant had terminated and from publishing that complainant had no right to transact business within the state of North Dakota.

Counsel for the commissioner did not challenge the sufficiency of the complainant's bill to state a cause of action in equity against him in the court below, nor have they challenged it on that account here. Their grounds for the reversal of the decree which they ask in this case are (1) that the answer contains such material denials of the allegations of the bill that it was error to strike it out as an entirety; (2) that it contained two affirmative defenses, to the effect that the complainant did not come into the court below with clean hands; (3) that there was no default of the defendant or order that the bill be taken pro confesso, and that the court could not at a final hearing enter a decree without any proof of any fact alleged by the complainant outside of the fact that the order of the commissioner was in force and would be carried out.

The decisive question in this case is: Did the commissioner have lawful authority to make and modify the contracts between the Home Insurance Company and its agents and the right to enforce such contracts made or modified by the commissioner under the penalty of the deprivation by him of the company's right to continue its insurance business in the state of North Dakota? His order was that agency contracts existing between the insurance company and some of its agents, which were terminable at the will of either party, should be perpetual at the will of the agents, and that new contracts of like character should be made between the insurance company and some of its agents whose contracts of agency had been terminated, and it was stipulated at the final hearing by the commissioner and the complainant that he had threatened and then threatened to enforce and carry out that order.

Under this state of facts and this stipulation, the indispensable condition of a good defense to the cause of action pleaded and stipulated was proof of the lawful authority of the commissioner so to make and modify and so to enforce such contracts made and modified by him.

[1] Bearing this fact in mind, we turn first to the denials in the answer which counsel for the commissioner cite as fatal to the complainant's motion for a decree notwithstanding the answer. The first denial cited is that there was any contract between the complainant and its agents for any definite term of duration; but that is an admission, not a denial, of the truth of an averment in the bill, and the effect of the order of May 20, 1924, is that certain of such contracts shall be perpetual at the will of the agents. The second denial is that the subject-matter of the order relates exclusively to the internal management of complainant's business or attempts to dictate what agents the complainant should or should not employ; but this denial is superseded and futile in the face of the order itself and of the stipulation of the commissioner at the close of the final hearing that it exists and that he still threatens to enforce it. The third alleged denial is an immaterial affirmative allegation that the custom of insurance companies is to keep their agents as long as they are faithful and effective. The fourth alleged denial is another irrelevant and immaterial averment to the effect that the business policy which the complainant is pursuing is not only its but that of the other union companies, and that they are pursuing this policy with a common understanding and agreement, and that they will injure the business of the mixed agencies unless the agents

agree to their demand to oust the bureau companies therefrom; and the fifth and final alleged denial is that the commissioner has threatened, except as provided by the order, to deprive the complainant of its right to do business in the state of North Dakota, and this denial is superseded by the stipulation of the commissioner at the close of the final hearing that he has threatened and still threatens to enforce his order. None of these denials plead or present in any way any statutory, legal, or other authority in the commissioner to make or modify the complainant's agency contracts or any defense to the cause of action pleaded by the complainant.

[2] Let us now look at the affirmative defenses. Two of them were pleaded. The first is that, by a conference agreement made between the bureau companies and the union companies, through the bureau and the union, about 1912, they established and used mixed agencies, which represented both classes of companies, and agreed that the scale of commissions paid to the agents in these mixed agencies by both classes of companies should be the same; that these two classes of companies made "rules of practice and legislation which became binding upon both the union and the bureau when ratified and adopted by the said bodies"; that the two bodies and the two classes of insurance companies operated under this conference agreement until October, 1923, when members of the union adopted a resolution requiring the conference committee to notify the members of the union and of the bureau that this conference agreement would be abrogated by December 31, 1923; that pursuant to that action the conference agreement was abrogated and ceased to exist in the year 1923; that the union companies then agreed among themselves to enforce so-called separation in the mixed agencies; that they gave their agents in those agencies the option to retain their agencies for them and terminate their agencies for their competitors, or to retain their agencies for their competitors and renounce their agencies for them; and that, if they failed to terminate their agencies for their competitors, the union companies would terminate their agencies for them.

The answer contains averments that the union companies pursued and are pursuing this course to monopolize the insurance business in North Dakota and that this course is generally injurious. But a consideration of all the averments in the answer regarding this claimed defense has left no doubt in our minds that the abrogation of the conference agreement and separation of the agents of the union companies from the agents in the mixed agencies must tend to increase competition between the insurance companies and their agents, and rather to destroy monopoly than to diminish competition and increase combinations and monopolies, and upon a thoughtful consideration of all the allegations in the answer relative to this defense we are satisfied that, if they were all proved, that would constitute no defense to the complainant's cause of action, would furnish no justification or warrant for the commissioner's order, much less vest in him the authority to make and modify the complainant's contracts with its agents as he undertakes by that order to do.

[3] The second affirmative defense rests on the contention of counsel for the commissioner that the complainant is entitled to no relief, however great his equity, because it has been guilty of such inequity as repels it from a court of chancery under the maxim, "He who comes into equity must come with clean hands." The inequity they allege is that the complainant is "guilty of entering into and participating in a conspiracy for the purpose of monopolizing or attempting to monopolize the business of insurance within the state of North Dakota, and of attempting unlawfully to restrain trade within the state of North Dakota." The commissioner sets forth in his answer sections 9950 and 9951 of the Compiled Laws of North Dakota of 1913, defining and denouncing pools and trusts, and declaring the entering into or becoming a member of or a party to any of them a misdemeanor, avers that the alleged acts of the complainant in its endeavor to separate its agents from the mixed agencies and itself from the conference agreement constituted a violation of the statutes denouncing pools and trusts, and that, under section 172, Comp. Laws N. D. 1913, being of article 8 of chapter 4 of the Political Code of North Dakota, and section 4925, Comp. Laws N. D. 1913, as amended by Laws N. D. Sp. Sess. 1919, c. 40, which provides that, "if the commissioner of insurance is of the opinion upon examination or other evidence that a foreign insurance company is in an unsound condition, or if it has failed to comply with the law, * * * he shall revoke or suspend all certificates of authority granted to it or to its agents."

[4] But the jurisdiction to hear, determine, and punish alleged violations of the anti-

pool and anti-trust laws of the state of North Dakota is in the courts of that state, and we hesitate to hold that, prior to the action of such courts, without notice to the insurance company of a proposed hearing, without a trial or hearing before the commissioner on the question of its alleged violation of such laws, the commissioner had the power to adjudge such violation and punish it under those laws by making or modifying its agency contracts or depriving it of its right to do business in the state of North Dakota. The commissioner's order of May 20, 1924, was not based on the violation by the complainant of these anti-pool and anti-trust laws, or on the violation of any other laws; but, as the order declares on its face, it was based on the alleged fact that the complainant had "seen fit to utterly disregard and ignore our wishes, by ruthlessly enacting such separation" of the mixed agencies. The alleged violation by the complainant of the anti-trust and anti-pool statutes had no causal or other relation to or effect upon the order of the commissioner or the separation of the agents of the complainant from the mixed agencies. The principle, "He who comes into equity must come with clean hands," repels a complainant from the court and denies him relief only when his inequity consists of wrongful conduct in the acts or transactions which raise the equity he seeks to enforce. Trice v. Comstock, 121 F. 620, 67 C. C. A. 646, 61 L. R. A. 176. "It does not extend to any misconduct, however gross, which is unconnected with the matter in litigation, and with which the opposite party has no concern. When 'a court of equity is appealed to for relief, it will not go outside of the subject-matter of the controversy, and make its interference to depend upon the character and conduct of the moving party in no way affecting the equitable right which he asserts against the defendant, or the relief which he demands." Pomeroy's Equity Jurisprudence (3d Ed.) general section IV, § 399; Camors-McConnell Co. v. McConnell (C. C.) 140 F. 412, affirmed 140 F. 987, 72 C. C. A. 681.

It is contended by counsel for the commissioner, and it is conceded, that if the answer by denial or affirmative pleading presented a good defense to the cause of action of the complainant, it was error to grant the complainant's motion to strike out the answer. But a careful consideration of the answer and the briefs and argument of counsel has convinced that no such good defense was pleaded.

Three other objections are made by counsel to the proceedings for the decree. They are: (1) That there was no default of the defendant or order that the bill be taken pro confesso; (2) that there was no evidence offered or introduced in support of the allegations of the bill; and (3) that "it was improper practice to consider the validity of affirmative defenses set out in the answer upon a motion to strike."

[5] But, first, no objection was made in the court below, nor was any error assigned, because no default was declared, or because no decree pro confesso was taken, and the defendant is estopped from insisting on these objections by the facts that he stipulated with the complainant that the trial and final hearing of the case upon the merits should be on July 16, 1924, that on that date the final hearing came on, that then the complainant moved to strike out the answer and the defendant consented to the hearing of that motion at that time without notice, and after hearing arguments the court granted the motion and allowed the defendant an exception.

[6] Second, it is not true that no evidence was introduced in support of the averments of the bill. After the motion to strike out the answer had been granted, and before the decree was rendered, the defendant stipulated with the complainant in writing that the order of May 20, 1924, was served on the complainant by the commissioner, that that order had never been revoked by him, that he "has threatened and does now threaten to enforce and carry out the same, and that this stipulation shall have the same force and effect as though the said order had been identified and offered and received in evidence upon the trial," and upon that stipulation the court subsequently rendered its decree.

[7] And, third, the objection that it was improper practice to consider the validity of affirmative defenses set out in the answer upon a motion to strike was not made in the court below, was not assigned as error, and, if these things had been done, the defendant would nevertheless have been estopped from resting upon them by his stipulations.

No prejudicial mistake of fact or error of law of the court below has been discovered in the proceedings in this case, and the decree below is affirmed.