PHOENIX FINANCE CORPORATION, Appellant, v. IOWA-WISCONSIN BRIDGE COMPANY, Appellee.

No. 46764.

NOVEMBER 13, 1945.

REHEARING DENIED JANUARY 11, 1946.

166

E. P. Donohue, of New Hampton, and A. H. Jacobson, of Waukon, for appellant.

F. A. Ontjes, of Mason City, for appellee.

SMITH, J.— The record is voluminous and complicated because of the previous extensive litigation involved. The present suit is brought asking for judgment upon a $50,000 note (and upon other items not necessary to discuss separately on this appeal) and for foreclosure of a mortgage securing same; and also for a decree requiring defendant to reissue five hundred seventeen shares of its Class A stock formerly owned by plaintiff's predecessor in interest (Phoenix Finance System, Inc.) but subsequently exchanged for bonds secured by the trust deed hereinafter referred to. Plaintiff alleged an agreement concurrent with said exchange that if the validity of the bonds received by it in the exchange be attacked by any person plaintiff's predecessor might surrender said bonds and be repossessed of the stock involved in the transaction.

Defendant pleaded res adjudicata based upon a decree in the United States District Court for the Northern District of Iowa, and affirmed by the Eighth Circuit Court of Appeals, in a suit for the foreclosure of a trust deed securing a $200,000 bond issue which included bonds issued to plaintiff in exchange for its $50,000 note and mortgage (and other items secured thereby) and the five hundred seventeen shares of stock heretofore referred to. See Bechtel Tr. Co. v. Iowa-Wisconsin Bridge Co., D. C., Iowa, 19 F. Supp. 127; and First Tr. & Sav. Bk. v. Iowa-Wisconsin Bridge Co., 8 Cir., Iowa, 98 F. 2d 416.

In reply plaintiff, among other matters, alleged that the $50,000 note and mortgage, by the terms of the exchange agreement, were reinstated when attack was made upon the validity of the bonds involved in the exchange.

The court ordered that the plea of res adjudicata be first heard and at a pretrial conference it was stipulated that for the purpose of such hearing it would be considered that plaintiff had introduced evidence in support of its action. This appeal is from the decree in favor of defendant upon the plea of res adjudicata.

For convenience we shall hereinafter refer to plaintiff and its predecessor in interest as Phoenix, and to defendant as the Bridge Company.

The bond-foreclosure suit above mentioned was instituted by the trustees in the trust deed at the request of Phoenix as holder of nearly ninety per cent of the bonds and was prosecuted by attorneys selected by it. It was maintained in Federal Court by reason of diversity of citizenship between the trustees and the Bridge Company. In the course of the proceedings certain stockholders of the Bridge Company intervened and their petition was permitted to stand as an answer to plaintiff's petition. It alleged fraud and want of consideration as to the bonds held by Phoenix. On motion Phoenix was made party as a coplaintiff and filed answer to the petition of intervention. The Federal District Court upheld the charges of fraud and lack of consideration and its decision was affirmed by the Eighth Circuit Court of Appeals. First Tr. & Sav. Bk. v. Iowa-Wisconsin Bridge Co., supra. The supreme court of the United States denied certiorari. Phoenix Finance Corp. v. Iowa-Wisconsin Bridge Co., 305 U. S. 650, 59 S. Ct. 243, 83 L. Ed. 420.

It is to be said further that in said bond-foreclosure case Phoenix, after having been brought in as party plaintiff, moved to dismiss for want of federal jurisdiction because both Phoenix and the Bridge Company were Delaware corporations and diversity of citizenship was therefore destroyed. The Federal District Court denied this motion, holding that the trustees were the indispensable parties plaintiff and the joining of Phoenix as a nominal or formal, but not indispensable, party did not oust the jurisdiction based on diversity. Bechtel Tr. Co. v. Iowa-Wisconsin Bridge Co., 19 F. Supp. at pages 141, 142. The Court of Appeals also affirmed this decision. First Tr. & Sav. Bk. v. Iowa-Wisconsin Bridge Co., 98 F. 2d 416.

The Bridge Company in the present case urges that by reason of the decision in the bond-foreclosure suit the issues here are all res adjudicata. Phoenix, on the other hand, contends that it was only a nominal party in the bond-foreclosure suit; that the trustees could only represent the bondholders so far as concerned the legality of the trust deed; and that, while the adjudication was final as to the right to foreclose the trust deed, it was not final or binding as an adjudication of the validity or invalidity of the indebtedness that constituted the consideration for the bonds. In argument it states its contention thus:

"We do not question * * * that the trustees had full power to represent the bondholders as to the validity of the trust deed and the decree denying the foreclosure did deprive the bondholders of the security afforded by the trust deed *but where the validity of the bonds of any particular bondholder is called into question the trustee does not represent the bondholder* * * * and that issue cannot be adjudicated until and unless the bondholder * * * is brought into court."

This contention was made in the course of the proceedings in the bond case. For example, a special-master's report was excepted to "for assuming to consider and pass upon the validity of any of the bonds; it being the plaintiff's contention that the Master should have considered the validity of the trust deed and whether the plaintiffs were entitled to foreclose the same for any amount and then thereafter to give each and all of the bondholders separate hearings upon the validity of the bonds held by them."

We do not find that either the district or appellate court discussed this exception specifically but it was overruled generally along with the rest of the exceptions. In passing on the question of federal jurisdiction, however, the Court of Appeals said:

"Had Phoenix not become a party the court could have proceeded to final judgment, granting or denying foreclosure. It could have decided every issue, including the validity of the trust deed and the amount of the debt secured thereby; and

the decree would have been binding upon the bondholders without their presence as parties to the record. Shaw v. Little Rock & Ft. Smith Ry. Co., 100 U. S. 605, 25 L. Ed. 757; Elwell v. Fosdick, 134 U. S. 500, 10 S. Ct. 598, 33 L. Ed. 998; Kerrison v. Stewart, 93 U. S. 155, 23 L. Ed. 843; Richter v. Jerome, 123 U. S. 233, 8 S. Ct. 106, 31 L. Ed. 132.

"Appellants contend that the proceeding below was a consolidation of two separate and distinct suits, one brought by the trustees to foreclose the trust deed and one brought by the bridge company and interveners to cancel the bonds held by Phoenix; and that jurisdiction as to each controversy must be determined separately. This contention is without merit. The object of the interveners was to have the trust deed and the bond issue as an entirety decreed to be void as a complete defense. The lower court acted upon that theory. It is true, as appellants point out, the appellees made no specific allegations of fraud on the part of the minority bondholders. But the petition of intervention did allege that the execution of the trust deed and the issuance of bonds were a part of a fraudulent scheme on the part of Thompson and his associates, and that none of the bonds had passed to bona fide purchasers. It was the duty of the court before decreeing foreclosure, to pass upon the validity of the deed of trust. Speers Sand & Clay Works v. American Trust Co., 4 Cir., 20 F. 2d 333, 336. Further, if the controversy between the two Delaware corporations should in any way be considered as a separate controversy involving only the validity of certain of the bonds, then it was ancillary to the foreclosure proceeding, and jurisdiction attached irrespective of citizenship, because the subject matter had been drawn into the federal court under the receivership before Phoenix became a party. Morgan's Louisiana & T. R. & S. S. Co. v. Texas Central Ry. Co., 137 U. S. 171, 201, 11 S. Ct. 61, 34 L. Ed. 625; Krippendorf v. Hyde, 110 U. S. 276, 4 S. Ct. 27, 28 L. Ed. 145. The court did not err in overruling appellants' attack on the jurisdiction." First Tr. & Sav. Bk. v. Iowa-Wisconsin Bridge Co., supra, 98 F. 2d at page 421.

Thus the net result is that Phoenix was held to be only a nominal party for the purpose of determining whether there

was federal jurisdiction but bound by the adjudication as to the invalidity of its bonds, at least for the purpose of the foreclosure suit. Before the case was appealed Phoenix filed a petition in the Federal District Court for a rehearing and explicitly asked, "that the decree be modified (1) by reserving from adjudication the question of the validity of the $50,000 mortgage * * * (2) by permitting Phoenix to institute an action at law against the bridge company, if it so desires, for money had and received; and (3) by reinvesting in Phoenix the five hundred seventeen shares of bridge company stock surrendered in exchange for bonds."

This petition was overruled and on appeal the Court of Appeals said:

"The petition for modification of the decree was also properly refused. The request to withhold from adjudication the question of the validity of the $50,000 mortgage and to permit Phoenix to sue for money had and received are plainly without merit. These questions were within the issues properly decided in the decree. In refusing to modify the decree to require the bridge company to return to Phoenix the five hundred seventeen shares of stock surrendered in exchange for bonds the court invoked the maxim that 'He who hath done iniquity shall not have equity.' This 'clean hands doctrine' is subject to the familiar limitation that a plaintiff is not barred from relief in a court of equity unless his wrong has an immediate and necessary relation to the equity for the enforcement of which he prays. Keystone Driller Co. v. General Excavator Co., 290 U. S. 240, 54 S. Ct. 146, 78 L. Ed. 293; Talbot v. Independent Order of Owls, 8 Cir., 220 F. 660; Olsness v. Home Ins. Co., 8 Cir., 14 F. 2d 907; Trice v. Comstock, 8 Cir., 121 F. 620, 61 L. R. A. 176; Primeau v. Granfield, 2 Cir., 193 F. 911. In the present case the district court adopted the view that all of the transactions leading up to the issuance of the bonds were steps in a single fraudulent enterprise to obtain ownership of the bridge after a foreclosure. We are not disposed to hold that this view of the lower court is wrong; and therefore we cannot say that appellants are entitled to have relief in equity in respect to any

part of the fraudulent enterprise. It may be added that the record does not compel the inference that there was no fraud in the original issuance and transfer to Phoenix of the five hundred seventeen shares of stock." First Tr. & Sav. Bk. v. Iowa-Wisconsin Bridge Co., 8 Cir., Iowa, 98 F. 2d 416, 428.

After the termination of the bond-foreclosure suit by dismissal of plaintiff's petition, affirmance by the Circuit Court of Appeals, and denial of certiorari by the United States Supreme Court, Phoenix filed its mortgage (in suit here) for record in the office of the recorder of Allamakee County, Iowa, in which county a part of the mortgaged property was situated. It also commenced certain suits against the Bridge Company in the state courts of the state of Delaware. In one of these it was sought to recover the five hundred seventeen shares of stock heretofore referred to. In others were involved items of indebtedness for which some of the bonds were issued that had been involved in the bond-foreclosure suit.

Thereupon the Bridge Company filed in the bond-foreclosure suit a "supplemental and ancillary" complaint asking that Phoenix be enjoined from prosecuting the Delaware suits and required to release of record in Allamakee county the $50,000 mortgage it had caused to be recorded. The Bridge Company based its request upon the same proposition that is relied on here, viz., that the validity of the mortgage and of the matters sued on in Delaware had all been adjudicated in the original foreclosure suit. An injunction issued. See First Tr. & Sav. Bk. v. Iowa-Wisconsin Bridge Co., D. C., Iowa, 32 F. Supp. 277.

Upon appeal to the Circuit Court of Appeals the decision of the district court was affirmed. Phoenix Fin. Corp. v. Iowa-Wisconsin Bridge Co., 8 Cir., Iowa, 115 F. 2d 1, 139 A. L. R. 1490. Phoenix then brought certiorari in the supreme court, which court reversed the district court decision—on the one ground, however, that the decision of the district court was in violation of Judicial Code, section 265, U. S. C., section 379, forbidding injunction by any federal court to stay proceedings in any state court. Phoenix Fin. Corp. v. Iowa-

Wisconsin Bridge Co., 314 U. S. 118, 62 S. Ct. 139, 86 L. Ed. 100, 137 A. L. R. 967.

The question of res adjudicata was not mentioned by the decision of the supreme court but the reversal was general and unqualified. Subsequently the United States District Court, upon petition of Phoenix, made an order directing the clerk to deliver to Phoenix the $50,000 note and mortgage which had been impounded. In doing this the court quoted 5 C. J. S. 1476, section 1950:

"The effect of a general and unqualified reversal of a judgment, order, or decree is to nullify it completely and to leave the case standing as if such judgment, order, or decree had never been rendered, except as restricted by the opinion of the appellate court."

The court added its own comment on the effect of the reversal in these words:

"* * * the Supreme Court did not indulge in any modification of the decree and in my view clearly indicated an intention to reverse the entire decree."

I. In appraising the legal effect of these various proceedings we must keep in mind the issues therein presented. The bond-foreclosure suit was brought by the trustees to foreclose the lien of their trust deed. Federal jurisdiction rested upon the unquestioned diversity of citizenship between the trustees and the Bridge Company. The validity of any obligation or indebtedness purporting to be secured by the trust deed was put in issue *only in order to determine whether the lien of the trust deed should be resorted to for its payment.*

In ordinary mortgage-foreclosure suits in federal court the deficiency judgment, if any, is entered only after sale has been ordered and held and the proceeds of such sale found insufficient to satisfy the obligation that has been found to be secured by the mortgage. In this respect federal procedure differs from our state practice under which judgment for the full amount is rendered prior to sale and sale is upon special execution based thereon. The validity of the obligations represented by the Phoenix bonds in the foreclosure suit, when

questioned, clearly could not have been litigated for the purpose of a deficiency judgment in favor of Phoenix. That would have been a matter between Phoenix and the Bridge Company, between whom there was no diversity of citizenship.

The inquiry into the validity of the bonds held by Phoenix was only for the purpose of determining whether they were secured by the lien of a valid trust deed. The trustees had no interest in the matter beyond that point. That far only was the issue of the validity of the bonded indebtedness ancillary to the foreclosure proceedings. We must so hold if we are to preserve what the United States Supreme Court has called "jurisdictional integrity." City of Indianapolis v. Chase Nat. Bk., 314 U. S. 63, 62 S. Ct. 15, 86 L. Ed. 47. The requirement of diversity could not be waived by either party or cured by consent or acquiescence of the parties. 25 C. J. 781, section 95; 35 C. J. S. 921, section 83; United States v. Corrick, 298 U. S. 435, 56 S. Ct. 829, 80 L. Ed. 1263.

The result of our reasoning thus far follows logically if we consider that Phoenix' interest in the foreclosure suit was represented by the trustees. The jurisdiction of the federal court could not be extended to include a controversy between Phoenix and the Bridge Company not ancillary to the controversy of which it had jurisdiction. The making of Phoenix a party plaintiff, therefore, had to be based on the theory that there was no independent issue between Phoenix and the Bridge Company thereby introduced but that Phoenix was thus given an opportunity to defend its own particular interest in the subject matter of the suit, i.e., its rights under the trust deed to have its bonds paid from the proceeds of a foreclosure sale—rights that had been challenged by a pleading asserting that its bonds were void for fraud and lack of consideration.

Viewed in this light the federal adjudication was clearly within its jurisdiction and binding on Phoenix for the purpose of the bond-foreclosure suit.

Let us consider first the situation as to the obligations secured by the $50,000 mortgage for which bonds were issued. It was adjudged that these bonds were without considera-

tion and represented no valid indebtedness because of fraud in the origin of a part and offsets sufficient to neutralize the rest.

II. Does it follow that this adjudication for the purpose of the bond-foreclosure suit estops Phoenix from asserting the same causes of action for another form of relief?

It is true that if we support the plea of res adjudicata we give the judgment in the federal court an indirect effect which it had no jurisdiction to accomplish directly. But if we hold, as we must, that Phoenix is personally bound for one purpose by the adjudication that its bonds were void because of fraud and lack of consideration in their inception, we must hold that it is bound for all purposes.

It elected to initiate the litigation in federal court in an effort to collect the obligations it seeks here to collect; it selected and paid the attorneys who prosecuted the suit for that purpose; the validity of its bonds was attacked by charges of fraud that vitiated not merely the bonds themselves and the deed of trust securing them but also the claimed indebtedness for which they were issued; it was made a party to the suit and given an opportunity to meet these charges; it knew it must meet and refute them if its bonds were to participate in a foreclosure sale of the property covered by the trust deed.

We must start with the proposition that "an adjudication by a competent tribunal is conclusive, not only in the proceeding in which it is announced, but in every other where the right or title is the same, although the cause of action may be different." Goodenow v. Litchfield, 59 Iowa 226, 233, 9 N. W. 107, 110, 13 N. W. 86. This proposition is reaffirmed and applied in Watson v. Richardson, 110 Iowa 698, 80 N. W. 416, 80 Am. St. Rep. 331. See, also, Rew v. Independent Sch. Dist., 125 Iowa 28, 98 N. W. 802, 106 Am. St. Rep. 282; Baxter v. Myers, 85 Iowa 328, 52 N. W. 234, 39 Am. St. Rep. 298.

In a still earlier case it was held that where an action against a railroad company for damages for failure to provide plaintiff a suitable crossing had resulted in a judgment

for defendant, plaintiff could not maintain a suit to compel the company to provide such a crossing. Bettys v. Chicago, M. & St. P. R. Co., 43 Iowa 602.

In the quite recent case of Kunkel v. Eastern Light & Power Coop., 232 Iowa 649, 656, 5 N. W. 2d 899, 902, we quoted with approval from 30 Am. Jur. 908, section 161:

"Briefly stated, the doctrine of res judicata is that an existing final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of rights, questions, and facts in issue, as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction."

The record in the bond-foreclosure suit clearly reveals an adjudication that the $50,000 note and mortgage represented no actual consideration but only a pretended one, based on fictitious checks drawn by Phoenix but eventually returned to it; and that the other items of claimed indebtedness for which bonds issued were offset by the gratuitous issue of one hundred forty shares of stock (not included among the five hundred seventeen shares hereinafter discussed).

For the purpose of this adjudication Phoenix was a proper party, the court had jurisdiction of the subject matter, and the legality of the claimed indebtedness was directly in issue. We can see no escape from the conclusion that these matters have been adjudicated between Phoenix and the Bridge Company and cannot be relitigated here.

The correctness of this conclusion is borne out not only by our own decisions but by other authority also. We have set out above a quotation already approved by us from American Jurisprudence. In 30 Am. Jur. 918, section 174, it is further said:

"In the application of the doctrine of res judicata, if it is doubtful whether a second action is for the same cause of action as the first, the test generally applied is to consider the identity of facts essential to their maintenance, or whether the same evidence would sustain both. If the same facts or evidence would sustain both, the two actions are considered

the same within the rule that the judgment in the former is a bar to the subsequent action. If, however, the two actions rest upon different states of facts, or if different proofs would be required to sustain the two actions, a judgment in one is no bar to the maintenance of the other. It has been said that this method is the best and most accurate test as to whether a former judgment is a bar in subsequent proceedings between the same parties, and it has even been designated as infallible.''

See, also, Band v. Reinke, 230 Iowa 515, 519, 520, 298 N. W. 865.

Two cases are cited as rejecting the test above formulated but an examination of them shows no essential disagreement with the rule. A decision of our own court, Watson v. Richardson, supra, is cited in favor of it. That case involved title to personalty claimed by plaintiff as an heir of a decedent. Plaintiff's right as an heir was questioned. The same question had been litigated between the parties in a partition suit (involving the real estate of the same decedent) in which plaintiff's heirship was upheld. By reason of that earlier decision the question was held to be res adjudicata.

In 34 C. J. 868, section 1282, it is said:

''A fact or question which was actually and directly in issue in a former suit, and was there judicially passed upon and determined by a domestic court of competent jurisdiction, is conclusively settled by the judgment therein, so far as concerns the parties to that action and persons in privity with them, and cannot be again litigated in any future action between such parties or privies, in the same court or in any other court of concurrent jurisdiction, upon either the same *or a different cause of action.''* (Italics supplied.)

The Bridge Company also pleads res adjudicata by reason of a decision of the Supreme Court of the State of Delaware in an action brought by Phoenix against the Bridge Company upon two promissory notes for which bonds had issued and were included among those involved and invalidated in the bond-foreclosure suit. Iowa-Wisconsin Bridge Co. v. Phoenix Finance Corp., 2 Terry 527, 25 A. 2d 383.

This Delaware decision (reversing the Delaware Superior Court) did not pass on the *merits* of the claim sued on but held the question had already been conclusively adjudicated in the bond-foreclosure suit. It cannot, therefore, be res adjudicata here upon the merits of Phoenix' claim. Whether it is an adjudication compelling us to support the claim of res adjudicata by reason of the decision in the bond case is doubtful. We are disposed to agree with Phoenix' contention that this Delaware decision constitutes stare decisis rather than res adjudicata. As such, however, it fortifies and confirms our own conclusion already expressed.

III. The record shows that $60,500 of the bonds declared in the prior foreclosure suit to be invalid were issued in exchange for five hundred seventeen shares of the Bridge Company stock. These bonds were adjudged invalid, partly, at least, because of the illegality of the exchange. Under the Delaware statute (section 19 of the General Corporation Laws of Delaware, Revised Code, 1935, section 2051) a corporation was forbidden to repurchase its own stock to the impairment of its capital.

If that had been the sole ground for holding these bonds to be unenforceable we would have no hesitation in holding that Phoenix may still litigate its claim for the five hundred seventeen shares of stock. In other words, an adjudication of the invalidity of the *exchange* of the stock for bonds would not imply that the stock had been illegally issued or was not legally held by Phoenix, or preclude Phoenix from asserting its contract for the return of the stock when the validity of the bonds was questioned.

It must be confessed that this branch of the case is not entirely free from doubt. The United States District Court might have rested its decision as to the $60,500 of bonds entirely upon the illegality of the transaction by which they were issued in exchange for stock.

These five hundred seventeen shares of stock were a part of a larger block of thirty-two hundred shares issued to Shaffer & Company, contractors, as a part of the cost of building the bridge. Shortly after their issue Shaffer sold the entire thirty-two hundred shares to Thompson & Company at

seventy cents on the dollar. John A. Thompson was a promoter and financier who officed with Shaffer and carried on his operations through Thompson & Company and Phoenix and possibly other affiliated corporations. He was also president of the Bridge Company and as such signed the contract by which the stock was issued to Shaffer. By the exchange of five hundred seventeen shares at par for bonds, Thompson (or Phoenix) would have made a profit of $15,510.

The United States District Court held these transactions were all a part of the plan for the fraudulent issue of bonds, and inferentially that the issue of stock was itself tainted with said fraud. The master, whose report was approved by the court, concluded that due to Thompson's position of control in both Phoenix and the Bridge Company, the burden was on him to show that all the transactions "were entirely fair, free from fraud and overreaching."

The Circuit Court of Appeals concludes: "It may be added that the record does not compel the inference that there was no fraud in the original issuance and transfer to Phoenix of the five hundred seventeen shares of stock." First Tr. & Sav. Bk. v. Iowa-Wisconsin Bridge Co., 8 Cir., Iowa, 98 F. 2d 416, 428.

We have sketched the situation hastily and with no thought of forming or expressing an opinion as to the good faith of the issue of stock. We have here the sole question of res adjudicata.

It is said in 34 C. J. 928, section 1333:

"It is sometimes difficult to determine when a particular issue determined is of sufficient dignity to be covered by the rule of estoppel. Whenever the question of fact is of such a character that it requires evidence to sustain it, and upon that evidence a determination has been reached and declared, the fact adjudicated is one which the parties and their privies will not be permitted to reopen in a subsequent action. But a finding or a judgment upon a point or issue that was immaterial to the decision of the case is not res judicata, although in some jurisdictions it is held that if a question of title was decided in a former suit, although it was not strictly neces-

sary for the court to pass on the question, yet if the issue was raised by the pleadings, fully argued, and actually considered by the court, it is res judicata.''

We accept this as a fair general statement of the rule. We have studied the record of the bond-foreclosure suit with care to determine just what was contended concerning these five hundred seventeen shares of Class A preferred stock. There are five large printed volumes of the transcript and a supplemental transcript of smaller size. We may perhaps be pardoned if we overlook something that might be deemed material to the present inquiry.

The only attack made in the pleadings upon the bonds issued in exchange for the stock is based upon the alleged illegality of the exchange. We find no pleading that attacks the legality of the issue of the stock. On the contrary, the answer of the Bridge Company alleged that the exchange of bonds for stock was improper ''and should be set aside *and said parties restored to their position as stockholders.*'' (Italics supplied.)

It is true Phoenix did ask in the foreclosure suit for a return of the stock for which some of the invalid bonds were issued. This request was denied by the district court. But this constituted no adjudication of the merits of the request. This is made clear by the opinion of the Circuit Court of Appeals:

''Having determined that the appellants had no standing to maintain their suit, the district court had neither the right nor the duty to compel the bridge company to restore what it had received from the bondholders. This is not a case in which the defrauded party is suing to rescind. Here the fraud has been pleaded only as a defense. Where the defrauded party is suing to rescind he must 'do equity' by restoring whatever he received from the wrongdoer; but when the wrongdoer as plaintiff is attempting to enforce the tainted contract he is turned out of court empty handed. [Citing cases.]

''In Columbus v. Mercantile Trust Co., supra, [218 U. S. 645, 662, 31 S. Ct. 105, 54 L. Ed. 1193.] where the plaintiff was seeking an injunction, the district court held that the

plaintiff was not entitled to such an injunction, but found that the defendant had been guilty of certain inequitable conduct, and entered a decree requiring the defendant to do equity as a condition for dismissing the plaintiff's bill. The Supreme Court reversed, saying (page 110): 'The court justified the imposition of conditions under the maxim that he who seeks equity must do equity. But this maxim is one which applies to him who affirmatively seeks equitable relief. * * * Manifestly the maxim cannot vest in the chancellor the power which has been exercised. It is true that the city by a cross bill asked to have the contract declared at an end for nonperformance. But this was defensive relief.'

"Under these long established principles of equity and the pleadings and proof in this cause the court did not err in refusing to modify the decree as requested by appellants by granting to complainants affirmative relief against the defendant." First Tr. & Sav. Bk. v. Iowa-Wisconsin Bridge Co., 8 Cir., Iowa, 98 F. 2d 416, 428.

The stock in question was not issued to Phoenix (or Thompson) but was acquired by him from Shaffer. The fact that Shaffer parted with it and Thompson (or Phoenix) acquired it at seventy cents on the dollar is not significant of any invalidity in the original issue of the stock. There is no allegation that the Bridge Company did not receive adequate consideration when the stock was issued to Shaffer. Any profit Phoenix would have made on a resale of the stock at par would have been at the expense of Shaffer and not the Bridge Company.

We are constrained to conclude that the adjudication of invalidity of this $60,500 of bonds was based upon the illegality of the exchange by which the bonds were issued, and that the validity of the five hundred seventeen shares of stock, if attacked in the present suit, may be litigated notwithstanding the language in the opinions of the federal courts in the former suit.

We are the more impelled to this view by reason of the fact, already pointed out, that the doctrine of res adjudicata, to the extent it is applied here, gives incidental effect to the decree of the federal court quite beyond any jurisdiction it

would have had to decide the matters directly. Phoenix' demand for a reissue or return of the stock was properly refused in the bond litigation because it was the subject of a controversy between Phoenix and the Bridge Company not incidental or ancillary to the then pending suit and with no diversity of citizenship between the parties to support the court's jurisdiction to pass on it.

It follows that Phoenix may now litigate its claim to the stock and the Bridge Company may assert whatever defense it may have to such claim.

The decision of the trial court will be affirmed as to the cause of action alleged in Count 1 of plaintiff's petition and reversed and remanded for further proceedings upon the remaining counts in accordance with this opinion.—Affirmed in part; reversed in part and remanded.

MILLER, C. J., and MULRONEY, HALE, WENNERSTRUM, MANTZ, and OLIVER, JJ., concur.

GARFIELD, J., dissents from Division III of the opinion and would affirm the trial court.

BLISS, J., takes no part.