# United States Court of Appeals

## For the Eighth Circuit

_____

No. 15-2333

_____

Larry Schaefer; Elaine Schaefer

*Plaintiffs - Appellants*

v.

Dale L. Putnam; Putnam Law Office; Raymond Schaefer; Dean Schaefer

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Northern District of Iowa, Waterloo

_____

Submitted: February 10, 2016
Filed: July 1, 2016

_____

Before SHEPHERD, BEAM, and KELLY, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Larry and Elaine Schaefer ("Larry and Elaine")[1] appeal the district court's[2] dismissal of their claims in this diversity action. The district court found that res judicata and collateral estoppel barred all claims. We affirm.

## I.

Larry and Elaine are husband and wife. They began to experience financial troubles after a $127,125 judgment was entered against Larry in 1998 for breach of a grain contract.

In January 2001, Larry and Elaine's attorney, Dale Putnam, advised them that if they were to file for Chapter 7 bankruptcy, the bankruptcy trustee could not reach real property transferred more than two years prior to filing their bankruptcy petition. Pursuant to this advice, Larry and Elaine executed ten quitclaim deeds transferring farmland and other real estate in Cerro Gordo County, Iowa (hereinafter the "Cerro Gordo Property") to a newly formed entity, G.R.D. Investments, LLC ("G.R.D."). Larry and Elaine's sons, Dean and Raymond Schaefer, were the sole members of G.R.D., and Larry and Elaine were the managers, each drawing a salary of $20,000 per year.

In October 2003, Larry and Elaine filed for Chapter 7 bankruptcy. Around the same time that Larry and Elaine filed for bankruptcy, Putnam sent them a letter addressing the amount of money they would need to settle their bankruptcy obligations. Putnam created SMP, LLC ("SMP"), and designated his wife as the sole member. He planned to utilize SMP to make a loan to Larry and Elaine.

---

[1]Because some of the parties share a last name, we refer to them by their first names for the sake of clarity.

[2]The Honorable Edward J. McManus, United States District Judge for the Northern District of Iowa.

The bankruptcy trustee filed a complaint seeking to avoid the ten quitclaim deeds to G.R.D. with respect to the Cerro Gordo Property as fraudulent transfers. The bankruptcy court issued an order concluding that the transfers to G.R.D. were fraudulent and merely an effort by Larry and Elaine and their sons to shield non-exempt assets from the parents' creditors. The court held that the transfers of the Cerro Gordo Property to G.R.D. were avoidable under 11 U.S.C. § 544(b)(1).

The trustee later filed a motion to amend the order and judgment seeking to modify the language pertaining to the quitclaim deeds from "avoidable" to "void." The bankruptcy court subsequently corrected its order to reflect that the transfers of the Cerro Gordo Property to G.R.D. were indeed void.

To prevent the trustee from selling the Cerro Gordo Property, Larry and Elaine borrowed money from SMP secured by a mortgage on their homestead and 40 acres of agricultural property. Rather than liquidating the Cerro Gordo Property for a cash distribution to creditors, the trustee accepted a settlement from Larry and Elaine (the "Settlement Agreement") in order to pay all of Larry and Elaine's creditors in full. The court subsequently granted Larry and Elaine's discharge from bankruptcy.

Following the bankruptcy, Raymond farmed the Cerro Gordo Property and paid rent to his parents. On May 6, 2008, after Raymond failed to pay rent, Larry and Elaine filed a forcible entry and detainer action in Cerro Gordo County. In response, Raymond and G.R.D. filed an action to quiet title in favor of G.R.D. On October 7, 2008, an Iowa district court determined that Larry and Elaine owned the Cerro Gordo Property. Raymond and G.R.D. appealed, and on November 25, 2009, the Iowa Court of Appeals reversed. Schaefer v. Schaefer, No. 08-2009, 2009 WL 4116197, at *4 (Iowa Ct. App. Nov. 25, 2009). On February 25, 2011, the Iowa Supreme Court issued an opinion agreeing with the Iowa Court of Appeals' analysis that the Cerro Gordo Property was owned by G.R.D. Schaefer v. Schaefer, 795 N.W.2d 494 (Iowa 2011).

-3-

On September 28, 2008, Larry and Elaine filed suit in Iowa state court against multiple parties, including Putnam, whom they claimed was negligent in his pre-bankruptcy and bankruptcy-planning advice, including advising them to form G.R.D. and transfer the Cerro Gordo Property to G.R.D. to stave off creditor claims. They also claimed that Putnam breached his duty of loyalty. Putnam counterclaimed for attorney's fees. The trial commenced on February 8, 2011, and on March 4, 2011, the jury found in favor of Putnam and awarded him a $12,200 judgment. On May 30, 2013, the Iowa Court of Appeals affirmed the award of unpaid legal fees. Schaefer v. Putnam, No. 11-1437, 2013 WL 2368819, at *7 (Iowa Ct. App. May 30, 2013).

In this action, filed on November 25, 2014, Larry and Elaine allege that Putnam was negligent in advising them regarding their bankruptcy, and that their sons, Raymond and Dean, acted in concert with Putnam to close the bankruptcy through the Settlement Agreement with the bankruptcy trustee. Specifically, Larry and Elaine contend that Putnam negligently advised them to enter into the Settlement Agreement, because if they had not executed the Settlement Agreement, they arguably would have owned the Cerro Gordo Property that they had previously transferred to G.R.D. after the bankruptcy court voided the transfer.[3] Larry and Elaine further allege that Putnam breached his fiduciary duty to them because he had conflicts of interest with respect to their bankruptcy.

Defendants Putnam and Putnam Law Office (collectively "Putnam") filed a motion to dismiss, arguing that Larry and Elaine's claim was barred by res judicata, collateral estoppel, and the statute of limitations. The district court determined that the jury verdict in the prior case disposed of all issues in the instant case but one: the alleged failure of Putnam to protect Larry and Elaine's interests when the bankruptcy

---

[3]The Court notes that Larry and Elaine ignore the fact that if they had not executed the Settlement Agreement, in all likelihood, the bankruptcy trustee would have obtained title to and sold the Cerro Gordo Property to pay off the claims of Larry and Elaine's creditors.

was closed. Larry and Elaine argued that their claim of negligence with regard to the protection of their interests in the Settlement Agreement had not accrued by the time the trial commenced in the first malpractice action because the Iowa Supreme Court had not yet rendered its decision regarding whether G.R.D. or Larry and Elaine owned the Cerro Gordo Property. However, the district court found that Larry and Elaine could have asserted this claim in the prior malpractice action but failed to do so. Thus, the district court concluded that claim preclusion and issue preclusion bar all claims that were or could have been brought in the first malpractice action. Accordingly, the district court granted Putnam's motion to dismiss Larry and Elaine's claims. This appeal followed.

II.

"We review de novo the district court's grant of a motion to dismiss for failure to state a claim based on res judicata." C.H. Robinson Worldwide, Inc. v. Lobrano, 695 F.3d 758, 763 (8th Cir. 2012) (quoting Laase v. Cnty. of Isanti, 638 F.3d 853, 856 (8th Cir. 2011)). We accept the non-moving party's factual allegations as true and construe all reasonable inferences in favor of the nonmovant. St. Jude Med. S.C., Inc. v. Cormier, 745 F.3d 325, 327 (8th Cir. 2014).

"The law of the forum that rendered the first judgment controls the res judicata analysis." St. Paul Fire & Marine Ins. Co. v. Compaq Computer Corp., 539 F.3d 809, 821 (8th Cir. 2008) (citing 28 U.S.C. § 1738). Thus, because an Iowa state court rendered the first judgment, Iowa law controls.

In Iowa, the general rule of claim preclusion provides that a valid and final judgment on a claim precludes subsequent actions by "the parties or their privies as to any claim or cause of action that was litigated or could have been litigated in the first action." Colvin v. Story Cnty. Bd. of Review, 653 N.W.2d 345, 348 (Iowa 2002). "A party must litigate all matters growing out of his claim at one time and not in

separate actions." Harrison v. State Bank of Bussey, 440 N.W.2d 398, 400 (Iowa Ct. App. 1989) (internal citations omitted). Thus, claim preclusion may foreclose matters that were never actually litigated. Arnevik v. Univ. of Minn. Bd. of Regents, 642 N.W.2d 315, 319 (Iowa 2002). The party against whom preclusion is asserted must have had a "full and fair opportunity" to litigate the matter in the prior action in order for claim preclusion to apply in a subsequent action. Id. at 319 (quoting Whalen v. Connelly, 621 N.W.2d 681, 685 (Iowa 2000)). "A second claim is likely to be barred by claim preclusion where the 'acts complained of, and the recovery demanded are the same or where the same evidence will support both actions.'" Id. (quoting Whalen, 621 N.W.2d at 685).

Iowa courts look for the presence of three factors when considering the defense of claim preclusion: (1) the parties in the first and second action are the same; (2) the claim in the second suit could have been fully and fairly adjudicated in the prior case; and (3) there was a final judgment on the merits in the first action. Arnevik, 642 N.W.2d at 319. If any one of these factors is not present, the defense of claim preclusion fails. Id.

Larry, Elaine, and Putnam were all parties to the prior malpractice action. Larry and Elaine argue, however, that they could not have brought their claim against Putnam for negligence with respect to the Settlement Agreement with the bankruptcy trustee because the Iowa Supreme Court did not issue a decision regarding the ownership of the Cerro Gordo Property until after the trial had commenced in the prior malpractice action.

To determine whether a claim in a second suit could have been fully and fairly adjudicated in the prior case, we must examine "(1) the protected right, (2) the alleged wrong, and (3) the relevant evidence." Pavone v. Kirke, 807 N.W.2d 828, 837 (Iowa 2011) (quoting Iowa Coal Mining Co. v. Monroe Cnty., Iowa, 555 N.W.2d 418, 441 (Iowa 1996)). "[I]f it is doubtful whether a second action is for the same cause of

action as the first, the test generally applied is to consider the identity of facts essential to their maintenance, or whether the same evidence would sustain both." Iowa Coal Mining Co., 555 N.W.2d at 441 (quoting Phoenix Fin. Corp. v. Iowa-Wisconsin Bridge Co., 20 N.W.2d 457, 462 (1945)).

In Pavone, defendants contractually agreed to involve plaintiffs in any opportunity defendants had to develop or operate a casino in Iowa, and to negotiate with plaintiffs in good faith to award them a management agreement. Pavone, 807 N.W.2d at 830. Plaintiffs filed a breach of contract action alleging that defendants failed to negotiate in good faith for a management agreement concerning a casino in Emmetsburg, Iowa (the "Emmetsburg action"). Id. at 831. About two months after filing the Emmetsburg action, plaintiffs learned that defendants had awarded a management agreement for a casino in Clinton, Iowa to another company. Id. at 838. Approximately two and half years after they filed the Emmetsburg action, plaintiffs filed a separate breach of contract action against defendants alleging a failure to negotiate in good faith with respect to the Clinton casino (the "Clinton action"). Id. at 831-32. The Iowa district court held that the Clinton action was barred by res judicata and granted summary judgment in defendants' favor. Id. at 832. The Iowa Court of Appeals and Iowa Supreme Court affirmed the grant of summary judgment. Id. at 832, 839.

The Iowa Supreme Court reasoned that the Clinton action involved the same protected right, and plaintiffs learned of the facts underlying the Clinton Action a little over two months after filing the Emmetsburg action, but did not amend their pleadings in the Emmetsburg action to include any allegations regarding the Clinton casino. Id. at 838. Instead, eleven months after the court had entered judgment in the Emmetsburg action, plaintiffs filed the Clinton action. Id. Thus, because plaintiffs had sufficient time and opportunity to amend their Emmetsburg complaint to seek additional damages, plaintiffs were required to bring their claims in a single cause of action. Id.

Likewise, Larry and Elaine filed their first malpractice action against Putnam on September 28, 2008, which was almost five months after they filed a forcible entry and detainer action regarding the Cerro Gordo Property. In response to their filing the forcible entry and detainer action, Raymond and G.R.D. filed an action to quiet title in favor of G.R.D. Thus, at the time Larry and Elaine filed the first malpractice action and as they litigated that action, they were aware that the Settlement Agreement had left a question as to whether they owned the Cerro Gordo Property, and thus they were aware of Putnam's purported negligence. In fact, more than a year prior to the commencement of trial in the malpractice action, the Iowa Court of Appeals determined that G.R.D. owned the Cerro Gordo Property, providing Larry and Elaine with more than enough time to amend their complaint.

Nevertheless, Larry and Elaine did not amend their complaint. Larry and Elaine contend that they could not bring their claim against Putnam for his negligence regarding the Settlement Agreement until the Iowa Supreme Court determined the ownership of the Cerro Gordo Property, but this contention is without merit. Their claim in this suit could have been fully and fairly adjudicated in the prior malpractice action because they were aware of all the pertinent facts underlying their claim. See Pavone, 807 N.W.2d at 838. Moreover, the protected right, alleged wrong, and relevant evidence are all virtually the same. The protected right at issue, which is Larry and Elaine's right as Putnam's clients to have Putnam uphold his fiduciary duties and act as a reasonably prudent attorney, is identical for both actions. This action involves the same alleged wrong as in the first malpractice case – Putnam's purported negligence in advising Larry and Elaine with respect to their bankruptcy, and more specifically, the Cerro Gordo Property. The relevant evidence that sustained their first cause of action would sustain this cause of action because a court would necessarily have to consider the pre-bankruptcy transfer of the Cerro Gordo Property to G.R.D. in order to understand any negligence on Putnam's part in advising Larry and Elaine to execute the Settlement Agreement.

Larry and Elaine claim that the first malpractice action concerned Putnam's pre-bankruptcy representation, and this action pertains to Putnam's negligence surrounding the Settlement Agreement, which resulted in their discharge from bankruptcy. However, in their complaint in the instant case, Larry and Elaine alleged, "This action grows out of the representation by Dale Putnam of Larry and Elaine Schaefer in connection with advice concerning the formation of a limited liability company called G.R.D. Investments, LLC, pre-bankruptcy planning advice and the filing of a Chapter 7 bankruptcy in United States Bankruptcy Court for the Northern District of Iowa." (Pls.' Compl. ¶ 8). Thus, Larry and Elaine have admitted that the facts arise out of the same transaction – Putnam's representation of Larry and Elaine from the time prior to their filing for bankruptcy and through the execution of the Settlement Agreement.

Larry and Elaine were aware that their ownership of the Cerro Gordo Property was disputed and had knowledge of all of the critical facts that would have supported their claim, yet they neglected to amend their complaint in the prior malpractice action to account for Putnam's alleged malpractice with respect to the Settlement Agreement. They have not shown that they should be allowed a second bite at the proverbial apple. Iowa courts have consistently held that plaintiffs cannot split claims arising from the same transaction into two separate legal actions when there is no just reason for the plaintiff's delay. See e.g., Villarreal v. United Fire & Cas. Co., 873 N.W.2d 714, 729-30 (Iowa 2016) (final judgment in breach of contract case generally bars subsequent bad-faith action against insurer because they form one transaction for claim preclusion purposes); Bagley v. Hughes A. Bagley, Inc., 465 N.W.2d 551, 554 (Iowa Ct. App. 1990) (holding that plaintiff's claim for back wages was precluded because it arose from the same transaction as the first claim, which required plaintiff to prove entitlement to back wages); Raymon v. Norwest Bank Marion, Nat. Ass'n, 414 N.W.2d 661, 666 (Iowa Ct. App. 1987) (plaintiff was obliged to raise all of his theories of recovery pertaining to the same transaction prior to final adjudication).

Furthermore, Iowa follows the approach of the Restatement (Second) of Judgments, which requires a plaintiff to bring all claims arising from the same transaction or series of transactions in one lawsuit. See Villarreal, 873 N.W.2d at 719 ("[W]e have previously discussed and relied upon the Restatement (Second) of Judgments in determining whether an action is barred by claim preclusion." (citing cases)). The Restatement (Second) of Judgments provides, "When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar . . ., the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." Restatement (Second) of Judgments § 24(1) (1982). Under the restatement approach, whether a factual grouping is part of a "transaction," and whether the groupings form a "series" is "to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." Restatement (Second) of Judgments § 24(2).

Likewise, looking to the Restatement factors, the facts in this case arise from the same transaction as in the first action, and are related in time, origin, and motivation. The facts would have created a convenient trial unit, and the parties' expectations and business understanding was likely that Putnam's representation was a single representation – one "client-matter," as attorneys often describe it. Thus, Larry and Elaine's claim in the instant action relates to the same cause of action that was adjudicated to a final judgment on the merits in the first malpractice case, and because Larry and Elaine have failed to show that their claim could not have been fully and fairly adjudicated in the first action, we hold that Larry and Elaine's claim is barred by res judicata.

## III.

For the foregoing reasons, we affirm the judgment of the district court.

_____