Carol BECKER, Administrator of the
Estate of Timothy Ray
Becker, Appellant,

v.

CENTRAL STATES HEALTH AND
LIFE COMPANY OF
OMAHA, Appellee.

No. 87–960.

Supreme Court of Iowa.

Nov. 23, 1988.

Donald A. Beneke, Pocahontas, and Diane M. Stahle of Davis, Hockenberg, Wine, Brown, Koehn & Shors, Des Moines, for appellant.

Edward D. Hotz, Omaha, Neb., and James W. Hudson, Pocahontas, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LAVORATO, NEUMAN, and SNELL, JJ.

LAVORATO, Justice.

Timothy Ray Becker, whose estate is the plaintiff in this action, purchased a health insurance policy from the defendant, Central States Health and Life Company of Omaha. After Timothy sought medical treatment for an illness that ultimately claimed his life, Central States denied coverage on the grounds that the illness was a preexisting condition. Because of this denial, Timothy was forced to seek government assistance in the form of Medicaid to pay for his mounting medical bills.

While he was alive, Timothy's mother, as guardian ad litem, sued Central States. She asked the court to order Central States to specifically perform its obligation under the policy by paying past and future medical expenses. The suit was tried after Timothy died and after his estate was substituted as the plaintiff.

Although the district court found that there was no preexisting condition it nevertheless denied relief, determining that the policy only paid for medical expenses for which the insured is legally obligated to pay in the absence of insurance. The court concluded that because Timothy's health care providers had accepted Medicaid payments in satisfaction of his medical expenses, no such liability existed and thus no damages resulted from the breach of the policy conditions. We disagree, and reverse and remand with directions.

I. *Background Facts and Proceedings.*

In September 1983 Timothy was attending Iowa Central Community College in Fort Dodge as a part-time student. Because he was twenty-one years old and not a full-time college student, Timothy was not covered by his parents' health insurance policy. Carol Becker, his mother, arranged health insurance coverage for Timothy with a local Central States agent.

The policy went into effect at 12:01 a.m. on October 18. It provided coverage in the amount of $1,000,000, with a $1000 deductible.

During the week of October 11 Timothy began exhibiting symptoms of what his mother thought was the flu. By October 18 Timothy began experiencing difficulties with his balance, coordination, and speech. After examining Timothy, the family doctor admitted him to a local hospital for observation and examination.

The following day Timothy was transferred to Mercy Hospital in Des Moines. His condition deteriorated rapidly, and by Thanksgiving he was comatose. He remained in this condition until he died on August 10, 1985 from what had been diagnosed as brain stem encephalitis.

In December 1983 Central States denied coverage on the ground that Timothy allegedly had a preexisting condition. By this time his medical expenses were very large. Neither Timothy nor his family could muster the necessary funds to pay these expenses. Because of these circumstances, the family sought government assistance in the form of Medicaid.

The illness proved to be a financial catastrophe. The medical bills totaled more than a million dollars. Under the Medicaid

program, however, Timothy's doctors and the hospitals accepted less than half of that amount as full payment.

Following Central States' denial of coverage, the suit for specific performance was filed. After a bench trial, the district court denied relief. It is from this decision that the estate has appealed.

## II. *Scope of Review.*

■ A specific performance action, which is equitable in nature, is reviewable de novo. *Decker v. Juzwik*, 255 Iowa 358, 367, 121 N.W.2d 652, 657 (1963). In equity cases, we give weight to the fact findings of the district court but are not bound by them. Iowa R.App.P. 14(f)(7).

■ Specific performance of a contract is not a remedy available as a matter of right. Its availability rests in the sound discretion of the court. *Youngblut v. Wilson*, 294 N.W.2d 813, 817 (Iowa 1980). If we find that specific performance is available, our equity jurisdiction allows us the necessary reach and flexibility to work out the equities of the parties. Hence, if we find a situation that is contrary to equitable principles and can be redressed within the scope of judicial action, we may devise a remedy to meet it, though no similar relief has ever been given. *Moser v. Thorp Sales Corp.*, 256 N.W.2d 900, 907 (Iowa 1977).

## III. *Does the Combination of Policy Language and Law Preclude Equitable Relief in the Form of Specific Performance?*

As we noted earlier, the district court found that Timothy did not have a preexisting condition which excused Central States from its obligation to pay under the policy. Yet the court denied specific performance because, in its view, the estate had failed to show that damage would result if the contract were not enforced. The court pointed to policy language and the law to support its conclusion:

The policy language limits defendant's responsibility for payment of medical costs only when the insured becomes "legally obligated to pay ... in the absence of insurance." In this case, plaintiff has no current or future legal obligation to pay for the medical expenses because the providers of care elected to accept Medicaid payments.... In accepting payments, they knowingly forfeited their right to demand payment from the patient.... No legal obligation to pay or legal right to collect exists by any entity. Plaintiff has failed to establish defendant's contractual obligation to make payment.

More importantly, both law and equity foreclose recovery by plaintiff. Enforcement of the contract is not required because plaintiff has not been damaged. Before defendant should be obligated to perform their duty of payment under the contract, plaintiff must show a legal obligation to pay a third party. This does not exist. It is a fundamental principle of law that to maintain an action for breach of contract, the plaintiff must show the alleged breach caused injury....

This is because causation is an essential element of liability in contract actions, just as in tort actions.... Only if plaintiff was required to account to the hospital for payment could they successfully maintain the action.

■ Apparently, Central States concedes that the policy was in effect at the time of Timothy's illness; it has not appealed the court's finding on the issue of preexisting condition nor does it argue that issue here. Failure to cross-appeal on an issue decided adversely to an appellee in an equity action, such as this one, forecloses the appellee from raising the issue on appeal. *Brutsche v. Incorporated Town of Coon Rapids*, 220 Iowa 1295, 1300–01, 264 N.W. 696, 699 (1936). We are left then with this issue: whether the estate is entitled to equitable relief requiring Central States to pay medical expenses previously paid by Medicaid. To resolve this issue, we must interpret policy language as well as statutory and regulatory provisions relating to Medicaid in light of fundamental principles of contract law.

■ In *Chicago & Northwestern Railway Co. v. Kramme*, we distinguished an agreement to indemnify from a promise to do a particular act or make a specific payment. 244 Iowa 944, 59 N.W.2d 204 (1953). In an agreement to indemnify, a cause of action does not accrue unless and until some actual loss or damage has been suffered. In contrast, where the promisor promises to do a certain act or make a specific payment, an action for breach of contract accrues when the time for doing such an act or making such payment has occurred and the promisor has failed to perform. Under these circumstances, it is no defense that the promisee has not been damaged. *Id.* at 949, 59 N.W.2d at 207 (agreement to pay all expenses for injuries incurred on job site held to be unqualified and absolute promise to pay; voluntary payment by promisee no defense); *accord Wicker v. Hoppock*, 73 U.S. (6 Wall.) 94, 99, 18 L.Ed. 752, 753 (1867) (distinguishing an agreement to pay from an agreement to indemnify; in an agreement to pay, "a recovery may be had as soon as there is a breach of the contract, and the measure of the damages is the full amount agreed to be paid"); 42 C.J.S. *Indemnity* § 3, at 566 (1944).

■ We agree with the administrator of Timothy's estate that the *Kramme* rule is applicable here. The policy pertinently provides:

*The benefits of this policy are payable for loss that begins while this policy is in force.* The loss must result from a covered injury or sickness. All benefits are subject to the terms of this policy. *All benefits of this policy are payable on an "Expense incurred" basis. "Expenses incurred" refers to those charges for which you are legally obligated to pay for in the absence of insurance.* These charges must be incurred by you ... while this policy is in force for loss due to a covered injury or sickness. *Expense is considered incurred on the date treatment is provided while this policy is in force.*

(Emphasis added.) The italicized language clearly provides that Central States will pay for all covered expenses incurred while the policy is in force. The policy defines "expenses incurred" as those for which the insured is legally obligated to pay in the absence of insurance. These expenses are considered incurred on the date treatment is provided. Plainly, this language is an agreement to pay rather than to indemnify.

■ Both the law and the facts convince us that at the time care was provided for him, Timothy was legally obligated to pay for it. Under elementary principles of contract law, a party who seeks medical treatment impliedly agrees to pay the reasonable value of the services rendered. *Black v. American Bankers Ins. Co.*, 478 S.W.2d 434, 437 (Tex.1972); *Republic Bankers Life Ins. Co. v. Anglin*, 433 S.W.2d 795, 796 (Tex.Civ.App.1968); 17 Am.Jur.2d *Contracts* § 4, at 337 (1964). The hospital considered Timothy responsible when Central States denied coverage because it addressed all medical bills to him at his residence. Moreover, the policy language quoted above does not limit Central States' obligation to the reimbursement of money paid by Timothy. To the contrary, according to this language, the company's obligation to pay became fixed once Timothy incurred the expense.

The fact that Timothy's family turned to government assistance which discharged his obligation to the health care providers convinced the district court that Central States no longer had a contractual obligation to pay. In reaching this conclusion, the court apparently relied on 441 Iowa Administrative Code 79.6 (hereinafter cited as section 79.6), which provides in relevant part:

Providers of medical and health care wishing to participate in the program shall execute an agreement with the department on form XIX (PA–1), Agreement Between Providers of Medical and Health Services and the Iowa Department of Social Services re Participation in the Medical Assistance Program. In this agreement, the provider agrees to the following:

. . . .

79.6(2) That the charges as determined in accordance with the department's policy shall be the full and complete charge for the services provided and no additional payment shall be claimed from the recipient or any other person for services provided under the program.

*See also* 441 Iowa Admin.Code 79.1 ("Providers of service must accept reimbursement based upon the department's methodology without making any additional charge to the recipient.") (hereinafter cited as section 79.1).

■ Central States, in support of the district court's conclusion, argues that no legal remedy exists to undo a health care provider's option to accept Medicaid payments. Citing 441 Iowa Administrative Code 78.1 (hereinafter cited as section 78.-1), Central States points out that a health care provider who charges a Medicaid recipient or any other person for services provided and paid for by Medicaid violates federal and state law. According to Central States, the health care providers should have waited for their money while Timothy sued under the policy.

We reject this contention. Central States cannot escape its clear obligation under the policy by such a waiting game. It was plainly liable under the contractual principles we have outlined. This liability was not dissipated by what followed as a result of the company's unwarranted denial of its liability.

Clearly, sections 78.1, 79.1, and 79.6 prohibit health care providers from charging Medicaid recipients for services over and above what Medicaid has paid. This prohibition is understandable in light of what the Medicaid program is and what it attempts to accomplish.

Medicaid is a federal and state cooperative welfare program that provides medical assistance to limited categories of people, such as individuals who receive supplemental security income or aid to dependent children. *Fernandez v. Iowa Dep't of Human Servs.*, 375 N.W.2d 701, 705 (Iowa 1985); 42 U.S.C. § 1396d(a) (1983); Iowa Code ch. 249A (1983); *see also Dunlap Care Center v. Iowa Dep't of Social Servs.*, 353 N.W.2d 389, 393 (Iowa 1984) (discussing history of Iowa's Medicaid program). More pertinently, the limited category of recipients includes persons who, like Timothy, receive care in a hospital, have limited income, and are unable to meet the full cost of their care. Holding Central States to its obligation under the policy is not inconsistent with this laudable purpose.

Because it denied relief, the district court did not determine what amount of Timothy's medical expenses were incurred for services and supplies covered under the policy. Nor have the parties argued this issue on appeal. In view of our holding, the decision of the district court must be reversed and the case must be remanded. On remand the district court is to decide this unresolved issue, utilizing the present record and whatever additional evidence the court may consider necessary.

## IV. *The Exclusions Issue.*

■ Contrary to Central States' contention, the result we reach is not inconsistent with several exclusionary provisions of the policy here.

Turning to the exclusions issue, we note that "expenses incurred" refers to those charges for which the insured is legally obligated to pay "in the absence of insurance." The language "in the absence of insurance" implies no coverage when other insurance is available. Another policy provision excludes from coverage

[e]xpenses for services, supplies or treatment provided by or paid for by an agency of the federal or state government, or any government plan or law where you are not charged or legally liable for services provided (unless such program by law specifies that the insurance hereunder is primary coverage). This exclusion includes, but is not limited to, Medicare payments.

As to the first provision, suffice it to say that Medicaid is not insurance as that term is used in the exclusion. Insurance is a contract whereby, for a stipulated consideration, one party undertakes to compensate

the other for loss on a specified subject by specified perils. *Black's Law Dictionary* 721 (5th ed. 1979). In contrast, Medicaid provides government medical assistance to a limited category of persons who are unable to meet the full cost of their care. No contractual arrangement for a stipulated consideration is involved.

■ As to the second provision, the regulations make it clear that the insurance coverage provided by Central States is primary coverage. *See* 441 Iowa Admin.Code 75.2 (health insurance must be used when reasonably available); 441 Iowa Admin. Code 80.5(2) ("When a third-party liability for medical expenses exists, this resource shall be utilized before payment is made through the medical assistance program except when authorized by the department."). Additionally, as we said earlier the health care providers charged Timothy the medical expenses. He was legally obligated to pay them the moment he received care and treatment. Finally, even if it were clear that the exclusion covered Medicaid, we would not allow an insurer to take advantage of an exclusion brought into play by its own breach.

V. *Disposition.*

In summary, we hold that under the policy, Central States was legally obligated to pay Timothy's medical expenses when he sought medical treatment. That obligation continued despite the use of Medicaid assistance to pay the health care providers. The Medicaid payments, to which none of the policy exclusions applied, were incorrectly made because of Central States' outstanding obligation to pay the medical expenses incurred by Timothy. On remand the district court shall determine the amount of medical expenses incurred for services and supplies covered under the policy and enter judgment accordingly.

REVERSED AND REMANDED WITH DIRECTIONS.