JOHNSTON EQUIPMENT CORPORATION OF IOWA, Appellant,

v.

INDUSTRIAL INDEMNITY, Appellee,

and

Custom Stainless Equipment Company, Inc.; Thomas A. Corrill; Sherry Corrill; and Thomas A. Corrill, as Father and Next Friend of Stacy Corrill and Cyndi Corrill, Defendants.

Thomas A. CORRILL, Sherry Corrill, and Thomas A. Corrill, As Father and Next Friend of Stacy Corrill and Cyndi Corrill, Appellants,

v.

INDUSTRIAL INDEMNITY, Appellee,

and

Custom Stainless Equipment Company, Inc., Defendant.

No. 91–742.

Supreme Court of Iowa.

July 22, 1992.

Gregory W. Landry, and Robert K. Du-
Puy of LaMarca & Landry, P.C., West Des
Moines, for appellants Thomas A. Corrill
and Sherry Corrill.

John F. Lorentzen of Nyemaster, Goode, McLaughlin, Voigts, West, Hansell & O'Brien, P.C., Des Moines, for appellant Johnston Equipment Corp. of Iowa.

David L. Phipps, and Kevin M. Reynolds of Whitfield, Musgrave & Eddy, Des Moines, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, P.J., and LARSON, SCHULTZ and ANDREASEN, JJ.

HARRIS, Justice.

Many insurance lawsuits involve claims of coverage, notwithstanding a missing provision in the policy. This dispute is the converse of the usual claim. Here the company contends that, because the parties so agreed, there should be no coverage for a products liability claim. We agree that there should be no coverage, even though no clear policy provision excluded it, and even though, through mistake, an endorsement excluding coverage was omitted from the policy.

On our de novo review of this equitable action, we find the following. Charles Corrill, a worker at a Denison, Iowa, packing plant, was injured when his hand was caught in a tilt dumper manufactured by Custom Stainless Steel Equipment Co., Inc. (Custom Stainless) and sold to the plant by Johnston Equipment Corporation of Iowa (Johnston). Corrill was joined in the suit by family members interested through him, though for simplicity the Corrills will be referred to in the singular. Corrill sued Custom Stainless and Johnston. Johnston filed a cross-claim seeking indemnity against Custom Stainless.

Industrial Indemnity had issued an insurance policy to Custom Stainless, which included comprehensive general liability coverage for the period in question. Both Custom Stainless and Industrial Indemnity were California corporations and the insurance policy was issued there. The parties stipulated that California law controls this litigation except that Iowa law applies to matters of evidence and with regard to the statute of limitations on a claim for reformation.

Under a reservation of rights, Industrial Indemnity at first proceeded to defend Custom Stainless, both against Corrill's suit, and against Johnston's cross-claim. Partway into the litigation it indicated it believed the policy provided no coverage and thereafter ceased defending.

Custom Stainless, Johnston, and Corrill reached a settlement under which Johnston paid Corrill $45,000. Johnston then obtained a default judgment against Custom Stainless for the $45,000 settlement paid to Corrill and for $54,552.36 in defense costs. Corrill obtained a default judgment against Custom Stainless totaling $1,454,996.

Johnston brought this declaratory judgment action against Industrial Indemnity and Corrill, requesting an adjudication that the policy covered liability for Corrill's injury. Corrill requested the same adjudication in a cross-claim against Industrial Indemnity.

The trial court concluded that, because of a mistake, a "product hazard exception" endorsement, which would have excluded coverage for product liability claims, was not included in the policy. The court nevertheless decided this omission did not mean the policy included products hazard coverage. Instead the court concluded that the policy did not provide coverage, a holding with which, for reasons to be explained, we disagree. The court rejected Industrial Indemnity's claim that the policy should be reformed by reason of mutual mistake, finding the burden to establish grounds for reformation had not been met. We also disagree with this holding. In other words, we hold that the policy did provide coverage, but should be reformed so as to exclude it.

■ I. The policy first provided for typical comprehensive liability coverage.[1] Fol-

---

1. The provision reads as follows:
I. COVERAGE A—BODILY INJURY LIABILITY

COVERAGE B—PROPERTY DAMAGE LIABILITY

lowing this general description of coverage are sixteen listed exclusions. No exclusion was listed for bodily injury or property damage caused by the insured's products. *Morris v. Atlas Assurance Co.*, 158 Cal. App.3d 8, 12, 204 Cal.Rptr. 95, 97 (1984), interpreted a homeowners policy that included "comprehensive personal liability" coverage. The California court stated that insurance policies are to be interpreted broadly, to afford the greatest possible protection to the insured. *Id.* at 13, 204 Cal. Rptr. at 97. Exclusions in the policy, however, are interpreted narrowly against the insurer. *Id.* The exclusions must conspicuously, plainly and clearly appear in the policy. *Cal–Farm Ins. Co. v. TAC Exterminators*, 172 Cal.App.3d 564, 577, 218 Cal.Rptr. 407, 414 (1985). This generic rule is also applied in Iowa. *A.Y. McDonald Indus., Inc. v. Insurance Co. of N. Am.*, 475 N.W.2d 607, 619 (Iowa 1991) (insurer should clearly and explicitly define any limitations or exclusions).

■ The declaration page for the policy in this case provided that the "only coverage afforded is that contained on those coverage parts and endorsements listed ... which are preceded by a form number." The declaration page listed types of coverage and by key number identified those purchased by the insured. The key number for "comprehensive general" coverage was included. Under the cited generic rule coverage was provided for this claim under the general comprehensive provision.

II. Overwhelming evidence supports Industrial Indemnity's claim that there was never any intent by either Custom Stainless or Industrial Indemnity for the policy to cover products liability risks. This was made clear when Industrial Indemnity undertook to provide the coverage. Acting

on this knowledge, Custom Stainless obtained the coverage from another company at a cost of $23,558.09.[2] The real dispute in the case involves Industrial Indemnity's contention that if, as we have found, the policy did provide products liability coverage, then the court should reform the policy to match the intentions of the parties.

Before addressing this contention it is necessary to consider threshold questions of (a) preservation of error and (b) waiver.

A. *Preservation of error.*

■ Because the trial court found there was no coverage in the policy, Industrial Indemnity did not feel obliged to, and did not, cross-appeal from the trial court's holding on the reformation issue. Corrill and Johnston Equipment contend the reformation issue was thereby waived. *See Becker v. Central States Health & Life Co.*, 431 N.W.2d 354, 356 (Iowa 1988) ("Failure to cross-appeal on an issue decided adversely ... forecloses ... raising the issue on appeal."). We think the issue was preserved. Although *Becker*, and certain of our other opinions, contain language to the contrary, we now hold that a successful party need not cross-appeal to preserve error on a ground urged but ignored or rejected in trial court. This is because a party need not, in fact cannot, appeal from a favorable ruling. *Wassom v. Sac County Fair Ass'n*, 313 N.W.2d 548, 549 (Iowa 1981).

■ The rule in *Wassom* is not inconsistent with the canon that issues must ordinarily be presented to and passed upon by the trial court before they can be raised and decided on appeal. *State Farm Mut. Auto. Ins. Co. v. Pflibsen*, 350 N.W.2d 202, 207 (Iowa 1984). The canon is a corollary

---

The Company will pay on behalf of the **insured** all sums which the insured shall become legally obligated to pay as damages because of

Coverage A—**bodily injury,** or

Coverage B—**property damage**

to which this insurance applies, caused by an **occurrence,** and the Company shall have the right and duty to defend any suit against the **insured** seeking damages on account of such **bodily injury** or **property damage,** even if any of the allegations of the suit are groundless,

false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements.

2. Because the purchased coverage was on a "claims made" rather than an "occurrence" basis, it does not cover Corrill's claim.

to the requirement under Iowa rule of civil procedure 179(b) that a rule 179(b) motion to enlarge or amend is necessary for preservation when a trial court fails to resolve a matter properly submitted. *Id.* at 206.

Notwithstanding our past holding to the contrary, we think the preservation requirement ordinarily should apply only to an unsuccessful party. Our cases are legion which hold that a trial court may be affirmed on grounds upon which it does not rely. *See, e.g., Midwest Management Corp. v. Stephens,* 353 N.W.2d 76, 78 (Iowa 1984). We think it is entirely appropriate for a successful, as distinguished from an unsuccessful, party to urge affirmance on such a basis. Our contrary holdings in *Becker* and *Fjelland v. Wemhoff,* 249 N.W.2d 634, 638 (Iowa 1977), are overruled. We reject the contention that error was not preserved.

### B. *Waiver.*

■■■ Corrill and Johnston Equipment also assert that, assuming the issue is preserved for appeal, Industrial Indemnity waived the issue of reformation by failing to include that legal ground in the letter reserving its right to deny coverage. According to California law any potential defenses known to an insurer not specifically included in a reservation-of-rights letter are waived. *See Intel Corp. v. Hartford Accident & Indem. Co.,* 692 F.Supp. 1171, 1180 (N.D.Cal.1988) (exclusion not mentioned in denial of coverage was waived); *Foremost Ins. Co. v. Wilks,* 206 Cal.App.3d 251, 258, 253 Cal.Rptr. 596, 600 (1988). Prejudice is irrelevant to a claim of waiver, which requires only a conscious relinquishment of a known right. Waiver cases in this respect differ from estoppel claims, which do require a showing of prejudice. *Miller v. Elite Ins. Co.,* 100 Cal.App.3d 739, 753–54, 161 Cal.Rptr. 322, 330 (1980).

There is a second footing for the waiver contention. It is also claimed that Industrial Indemnity waived the defense of reformation by failing to reform the policy within a reasonable time after it allegedly became aware that the policy lacked an exclusion for products liability. *See Verex Assurance, Inc. v. John Hanson Sav. & Loan Ass'n,* 816 F.2d 1296, 1302–03 (9th Cir.1987) (right to rescind insurance policy may be waived by failure to rescind policy after grounds for doing so are discovered or facts put insurer on notice to inquire); *Pierson v. John Hancock Mut. Life Ins. Co.,* 262 Cal.App.2d 86, 91, 68 Cal.Rptr. 487, 490 (1968) (when terms of policy have been violated and insurer knowingly fails to forfeit, cancel or rescind the policy within a reasonable time, the ground is waived or the insurer is estopped from asserting it as a ground for nonliability).

■■■ We conclude there was no waiver here under either theory. Three letters were written by Industrial Indemnity's claims adjuster to Custom Stainless' attorney reserving its right to deny coverage. It is true that none of the letters contained the words "reformation of contract for mutual mistake." But the letters consistently denied there was coverage for all the reasons we have discussed, including the fact that the parties did not intend for the policy to provide it. Anyone reading the correspondence should have understood Industrial Indemnity's present contention. We do not think California's waiver rule demands more specificity than this.

■■■ III. Under the record, as we have said, there was never any intent by either the insured (Custom Stainless) or the insurance carrier (Industrial Indemnity) for the policy to cover products liability risks. This finding almost directly mirrors the required finding for a court to allow reformation of a contract. The rule was applied in *Truck Insurance Exchange v. Wilshire Insurance Co.,* 8 Cal.App.3d 553, 556–57, 87 Cal.Rptr. 604, 606 (1970), a case allowing reformation of an insurance policy in order to exclude coverage. The court said:

> It is fundamental that a written contract may be reformed by a court of equity where, due to mutual mistake on the part of the parties, it fails to express their true intentions. Moreover, it is settled that an insurance policy may be reformed to limit or exclude coverage if such was the intention of the parties, even where the rights of third party

claimants who are not parties to the insurance contract are adversely affected. *Id.* at 559, 87 Cal.Rptr. at 607–08 (citations omitted). The party seeking reformation must introduce clear and convincing evidence to establish the intent of the parties. *Id.* at 560, 87 Cal.Rptr. at 609.

The rule is the same elsewhere, including Iowa. *Great Atlantic Ins. Co. v. Liberty Mut. Ins. Co.*, 773 F.2d 976, 981 (8th Cir. 1985); *American Employers Ins. Co. v. St. Paul Fire and Marine Ins. Co.*, 594 F.2d 973, 978 (4th Cir.1979); *The English Shop v. Hartford Fire Ins. Co.*, 4 Conn.App. 221, 223–24, 493 A.2d 899, 900–01 (1985); *L.E. Myers Co. v. Harbor Ins. Co.*, 67 Ill.App.3d 496, 500–01, 24 Ill.Dec. 182, 186, 384 N.E.2d 1340, 1344 (1978); *Baldwin v. Equitable Life Assurance Soc'y*, 252 Iowa 639, 645, 108 N.W.2d 66, 68 (1961) (reformation permitted despite insured's claim that his intent did not match that of the insurer's); *Murley v. Northwestern Pacific Indem. Co.*, 265 Or. 49, 52–53, 507 P.2d 1145, 1147 (1973).

▮▮▮ Evidence of the parties' intent was admitted over objection. We agree, though, with the trial court that the admission was not prohibited by Iowa Code section 515.95 (1989) (insurer to attach any application or representations "of the assured"). *See Dohse v. Market Mens Mut. Ins. Co.*, 253 Iowa 1186, 1192, 115 N.W.2d 844, 847–48 (1962) (holding inadmissible letter offered on claim that it was a part of insurance application in an attempt to show mutual mistake concerning policy's effective date). The purpose of section 515.95 is to make certain that "the writings composing the [policy] may all appear together and the insured may be in possession of the evidence of what [the policy provides]." *Id.* at 1192, 115 N.W.2d at 847–48. Under Iowa Code section 515.96, if there is a failure to attach copies of letters, the policy is not invalid, but the insurance company cannot plead or prove any representations relating to coverage. The evidence in this case in no way relates to representations made "by the assured." The statutes have no application here.

▮▮▮ Neither is the evidence inadmissible on the challenge that it is an attempt to vary the policy by parole evidence. When a party seeks reformation of a policy so that it will match the parties' intentions, extrinsic evidence is admissible to prove what their intentions were. *American Employers Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 594 F.2d 973, 978 (4th Cir.1979). Courts typically rely on the testimony of the insured and insurer to determine the intent of the parties at the time they negotiated for the policy. *Id.*

▮▮ IV. Johnston Equipment argues that Industrial Indemnity is precluded from seeking reformation of the policy because the statute of limitations has run. The argument is also without merit. Reformation may be raised as an affirmative defense after the period of limitations has run for affirmative actions. *See, e.g., Great Atlantic Ins. Co. v. Liberty Mut. Ins. Co.*, 773 F.2d 976, 978–79 (8th Cir. 1985); *Metropolitan Casualty Ins. Co. v. Friedley*, 79 F.Supp. 978, 982 (N.D.Iowa 1948); 51 Am.Jur.2d *Limitation of Actions* § 76, at 655 (1970).

Although we have not discussed them, we have not overlooked other contentions argued on appeal. They have been considered and rejected. To discuss them would unduly extend this opinion and yield nothing of precedential value. We conclude that the policy, as written, did provide coverage for Corrill's claim, but that it should be reformed to reflect the parties' intent to exclude that coverage.

AFFIRMED.