# IN THE SUPREME COURT OF IOWA

No. 18–2183

Filed March 20, 2020

**LEMARTEC ENGINEERING & CONSTRUCTION** n/k/a **LEMARTEC CORPORATION,**

Appellant,

vs.

**ADVANCE CONVEYING TECHNOLOGIES, LLC,**

Appellee.

Appeal from the Iowa District Court for Monroe County, John Telleen, Judge.

On interlocutory appeal of a district court order granting summary judgment in appellee's favor, appellant argues appellee is not entitled to claim preclusion or issue preclusion even though the federal court found in appellee's favor in the parallel federal case. **REVERSED AND REMANDED WITH DIRECTIONS.**

Erik W. Scharf, Miami, Florida, Mark L. Tripp, Andrew C. Johnson, Thomas M. Boes, and Robert J. Thole of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, and Jason L. Molder, Miami Florida, for appellant.

Kevin J. Caster and Dana L. Oxley (until withdrawal) of Shuttleworth & Ingersoll, P.L.C., Cedar Rapids, for appellee.

**APPEL, Justice.**

In this construction law case, we consider the applicability of the doctrines of claim and issue preclusion to disputes arising out of a contract between two subcontractors in a construction project.

First, a dispute arose around the fabrication and operation of a salt conveyor system. In federal litigation, a number of subcontracting parties litigated questions related to the fabrication of the salt conveyor system prior to litigation. The federal controversy was eventually reduced to judgment.

The owner of the facility filed a second lawsuit against subcontractors involved in the federal litigation in state court. The owner claimed in the state court litigation that after installation, the salt conveyor system developed corrosion issues in breach of contract and express and implied warranties. The parties filed various cross-claims, with one contractor seeking indemnity from the fabricator of the salt conveyor system.

After the federal litigation was resolved, a successful subcontractor in the federal litigation brought a motion for summary judgment in the state court action, arguing that determinations in the federal litigation precluded parties from litigating issues related to the salt conveyor system in state court.

The district court granted summary judgment to the successful federal subcontractor on claim and issue preclusion grounds. A disappointed party sought interlocutory appeal, claiming, among other things, that the successful party in the federal litigation waived its claim preclusion argument in the state court litigation because it failed to give notice of intent to pursue claim preclusion in the simultaneously pending state court litigation. On the question of issue preclusion, the

disappointed party asserted that it had no reasonable opportunity in federal court to litigate its indemnity claim related to the alleged corrosion problems that arose after the salt conveyor equipment was installed and, therefore, issue preclusion did not apply.

We granted the application for interlocutory review. For the reasons expressed below, we conclude that the district court erred in granting summary judgment based on claim and issue preclusion under the facts of this case.

**I. Factual and Procedural Background.**

**A. Relationship of the Parties.** In 2013, HF Chlor-Alkali, LLC (HFCA) entered into a written agreement with Conve & AVS, Inc. (Conve) to construct a chlor-alkali manufacturing facility (the Project) in Eddyville, Iowa. Conve in turn entered into a subcontract with Lemartec Engineering & Construction n/k/a Lemartec Corporation (Lemartec) to design and build the physical plant for the Project which included a salt conveyor system (conveyor system).

Lemartec subcontracted part of the work on the conveyor system to two other entities. Lemartec, through a purchase order, hired Advance Conveying Technologies, LLC (ACT) for the design and manufacture of the conveyor system. Later, Lemartec entered into a subcontract with Southland Process Group, LLC (SPG) for the installation and erection of the conveyor system at the Project location.

The conveyor system aspect of the Project did not proceed smoothly. SPG claimed that there were problems with the component parts supplied by ACT. Lemartec contacted ACT, claiming deficiencies in ACT's work. SPG eventually finished the work but claimed that it incurred significant additional costs and that Lemartec and ACT were responsible for them.

**B. Filing of Federal Court and State Court Litigation.**

1. *Overview of federal court litigation.* The first litigation arrow in this case was fired by SPG on October 16, 2015, in the United States District Court for the Southern District of Iowa. SPG sought to recover its additional expenses related to the assembly of the conveyor system from Lemartec and ACT. Lemartec and SPG settled outstanding disputes between them, leaving ACT's claim that Lemartec improperly withheld from ATC the balance owed under the purchase order to be litigated.

2. *Overview of state court litigation.* The completed Project was turned over to Conve in June 2015 and later to owner HFCA. HFCA was dissatisfied with many aspects of the Project. As a result, HFCA launched the second litigation arrow in this case in state court, naming a number of defendants including Conve. HFCA alleged, among other things, that the conveyor system was installed, turned over and put to use, and failed to perform to specifications. Conve, in turn brought a third-party claim against Lemartec for indemnification and contribution. Lemartec on June 5, 2017, brought a third-party claim against ACT.

ACT filed an answer to Lemartec's third-party claim. In its answer, ACT did not make reference to the pending federal litigation and did not raise a res judicata affirmative defense.

Discovery proceeded in the state court litigation. On June 14, 2018, HFCA served interrogatory responses on the parties. According to the responses, HFCA claimed that the conveyor system failed to perform in that the conveyor components and electrical system corroded; the conveyor belt did not pass approval testing; the bucket system leaked, corroded, and fell apart; and the equipment ruptured due to the failure to prevent vibrations.

3. *Federal court judgment.* The federal court held a bench trial in the federal litigation in April 2018. The federal court characterized the issue to be tried as "whether either of the two remaining parties [Lemartec and/or ACT] owes money to the other for money earned, but unpaid; project delays; and for additional work that was required to make the conveyor system functional."

On May 21, 2018, the federal district court entered its ruling in favor of ACT. The federal district court awarded ACT $317,467.07 plus interest. Lemartec has appealed the case to the United States Court of Appeals for the Eighth Circuit.

4. *Summary judgment in state court proceedings based on preclusive effect of federal judgment.* On August 15, 2018, ACT filed a motion for summary judgment in the state court proceedings. In its moving papers, ACT claimed that the judgment in the federal litigation compelled judgment in its favor in the state court litigation. Lemartec responded, in part, that res judicata is an affirmative defense that must be raised in an answer and that ACT had failed to do so. In response, on October 31, 2018, ACT filed a motion to amend its answer to include a res judicata affirmative defense. Lemartec opposed the motion.

The district court granted ACT's motion for summary judgment. The district court rejected Lemartec's argument that ACT waived its right to assert preclusion where litigation is simultaneous by failing to provide Lemartec with notice. On the question of claim preclusion, the district court found that the claims in the federal and state actions were similar because they are "premised on the contractual relationship between Lemartec and ACT." Turning to issue preclusion, the district court reasoned that "the issue of indemnity rights arising under the Purchase Order has been raised and litigated in the prior federal action." As a result,

the district court granted summary judgment on both claim preclusion and issue preclusion. Lemartec appealed. We retained the case for our consideration.

### III. Claim Preclusion.

**A. Introduction.** This case involves the related concepts of claim preclusion and issue preclusion.

1. *Claim preclusion.* Claim preclusion is "based on the principle that a party may not split or try his claim piecemeal . . . . A party must litigate all matters growing out of his claim at one time and not in separate actions." *Iowa Coal Mining Co. v. Monroe County*, 555 N.W.2d 418, 441 (Iowa 1996) (*quoting B & B Asphalt Co. v. T.S. McShane Co.*, 242 N.W.2d 279, 286 (Iowa 1976)). "Once an issue has been resolved, there is no further fact-finding function to be performed." *Colvin v. Story Cty. Bd. of Review*, 653 N.W.2d 345, 349 (Iowa 2002).

2. *Issue preclusion.* Issue preclusion prevents a party "from relitigating in a subsequent action issues raised and resolved in [a] previous action." *Soults Farms, Inc. v. Shafer*, 797 N.W.2d 92, 103 (Iowa 1981). "[W]here a particular issue or fact is litigated and decided, the judgment estops both parties from later litigating the same issue." *Grant v. Iowa Dep't of Human Servs.*, 722 N.W.2d 169, 174 (Iowa 2006). Issue preclusion applies to both factual and legal issues raised and resolved in a previous action. *See Barker v. Iowa Dep't of Pub. Safety*, 922 N.W.2d 581, 587 (Iowa 2019).

The doctrine "serves a dual purpose: to protect litigants from 'the vexation of relitigating identical issues with identical parties' " and to further "the interest of judicial economy and efficiency by preventing unnecessary litigation." *Winnebago Indus. v. Haverly*, 727 N.W.2d 567, 571–72 (Iowa 2006) (quoting *Am. Family Mut. Ins. v. Allied Mut. Ins.*, 562

N.W.2d 159, 163 (Iowa 1997)). Issue preclusion "prevent[s] the anomalous situation, so damaging to public faith in the judicial system, of two authoritative but conflicting answers being given to the very same question." *Emp'rs Mut. Cas. v. Van Haaften*, 815 N.W.2d 17, 22 (Iowa 2012) (quoting *Grant*, 722 N.W.2d at 178).

In order to successfully invoke issue preclusion,

> (1) the issue in the present case must be identical, (2) the issue must have been raised and litigated in the prior action, (3) the issue must have been material and relevant to the disposition of the prior case, and (4) the determination of the issue in the prior action must have been essential to the resulting judgment.

*Fischer v. City of Sioux City*, 654 N.W.2d 544, 547 (Iowa 2002).

### B. Position of Lemartec.

1. *Waiver of claim preclusion.* Lemartec claims that ACT waived its right to assert claim preclusion in the state litigation. According to Lemartec, when two cases are pending simultaneously, a litigant must invoke claim-splitting remedies in the litigation or waive any claim-splitting relief. In support of its waiver theory, Lemartec cites section 26, comment *a* of the Restatement (Second) of Judgments, which provides,

> Where the plaintiff is simultaneously maintaining separate actions based upon parts of the same claim, and in neither action does the defendant make the objection that another action is pending based on the same claim, judgment in one of the actions does not preclude the plaintiff from proceeding and obtaining judgment in the other action. The failure of the defendant to object to the splitting of the plaintiff's claim is effective as an acquiescence in the splitting of the claim.

Restatement (Second) of Judgments § 26 cmt. *a*, at 235 (Am. Law Inst. 1982) [hereinafter Restatement (Second)]. Lemartec asserts that this court adopted the approach of the comment in *Pagel v. Notbohm*, 186 N.W.2d 638 (Iowa 1971), and *Noel v. Noel*, 334 N.W.2d 146 (Iowa 1983). In *Pagel,*

the defendant filed answers in two simultaneous actions without taking any steps to consolidate or object to claim splitting. 186 N.W.2d at 639. In *Noel*, a son brought a district court action against his father seeking to recoup improvements to a leasehold, and, after his father's death, brought a claim in probate related to the same subject matter. 334 N.W.2d at 147. The executor answered in both actions but did not note the pendency of the other action or ask for consolidation of the cases. *Id.* After judgment was entered in the district court action, the executor sought to preclude the probate litigation. *Id.* The *Noel* court rejected claim preclusion, noting that "decisions dealing with this situation hold that a party waives claim preclusion by failing to interpose it prior to judgment in the first case." *Id.* at 149.

Lemartec recognized that the district court allowed ACT to amend its pleading to assert res judicata arising from the federal judgment after ACT filed its motion for summary judgment in this case. Lemartec asserts that res judicata is an affirmative defense "to be asserted by answer and cannot be raised by a motion to dismiss." *Bertran v. Glens Falls Ins.*, 232 N.W.2d 527, 532 (Iowa 1975) (quoting *Bickford v. Am. Interinsurance Exch.*, 222 N.W.2d 450, 454 (Iowa 1974)). Lemartec asserts that by waiting until a judgment was entered in the federal litigation, ACT foreclosed Lemartec's ability to weigh its options in the federal litigation to ensure its indemnity claims were not preempted. *Clements v. Airport Auth.*, 69 F.3d 321, 329 (9th Cir. 1995). Lemartec urges that the burden is on the defendant to give timely notice of an objection to claim splitting where simultaneous litigation is pending. *Brown v. Lockwood*, 432 N.Y.S.2d 186, 199 (App. Div. 1980).

2. *Claims arising after filing of first complaint.* Lemartec asserts that claims in the state court litigation arose after the filing of the complaint in

the federal law suit. Based on this factual premise, Lemartec claims Iowa should adopt a bright-line rule that when claims arise after the filing of the first complaint, the doctrine of claim preclusion should not apply. Lemartec contends that the approach that claim preclusion does not apply to foreclose litigation in another forum when the claims arise after the filing of the first action has been adopted by courts in California, Minnesota, and at least seven federal circuits.[1] Lemartec recognizes that Iowa has not yet adopted the rule but argues that it is consistent with Iowa law and should be adopted now.

In seeking to apply the after-filing, bright-line rule, Lemartec emphasizes that it seeks to enforce indemnity claims in the state and federal litigation. Lemartec observes that indemnity claims do not accrue until the indemnitee's liability is fixed. Lemartec points out that the federal litigation claim dealt with SPG's claim that the performance of Lemartec and ACT delayed SPG's work and increased its expenses in installing the conveyor system. In contrast, in the state court litigation, HFCA asserted that, as installed, postcompletion, the conveyor system was defective. The federal court claims and the state court claims, according to Lemartec, did not arise at the same time. *See Minch Family LLLP v. Buffalo-Red River Watershed Dist.*, 628 F.3d 960, 966–67 (8th Cir. 2010).

3. *Claims materially distinguishable.* Lemartec contends that ACT cannot assert claim preclusion because the claims in the federal and state litigation are materially distinguishable. Lemartec reprises its refrain: the

---

[1]*See Howard v. City of Coos Bay*, 871 F.3d 1032, 1040 (9th Cir. 2017) (stating California rule); *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 919 (2d Cir. 2010); *Smith v. Potter*, 513 F.3d 781, 783 (7th Cir. 2008); *Rawe v. Liberty Mut. Fire Ins.*, 462 F.3d 521, 529–30 (6th Cir. 2006); *Mitchell v. City of Moore*, 218 F.3d 1190, 1202 (10th Cir. 2000); *Manning v. City of Auburn*, 953 F.2d 1355, 1360 (11th Cir. 1992); *Mach v. Wells Concrete Prods. Co.*, 866 N.W.2d 921, 925 (Minn. 2015); *cf. Young-Henderson v. Spartanburg Area Mental Health Ctr.*, 945 F.2d 770, 774 (4th Cir. 1991) (allowing for the possibility of claims that could not be raised at the time of initial filing).

federal suit involved a claim for indemnity based on SPG's precompletion allegations, while the state court litigation involves a claim for indemnity based upon HFCA's and Conve's postcompletion allegations.

Lemartec argues that a comparison of the federal district court's ruling and the pleadings in the state court litigation proves the point. In its ruling, the federal district court noted that "[o]ther parties, and in large part Lemartec itself, caused the delays that Lemartec failed to prove were caused by ACT." Further, the federal district court observed that "the evidence is that ACT delivered product within a reasonable amount of time from Lemartec's implementation of the fast-track delivery system." In contrast, Lemartec argues the state court litigation focuses on HFCA's allegations that the conveyor system, as installed, failed to meet expectations.

Lemartec cites *Iowa Coal Mining Co.* for the general proposition that "if . . . the two actions rest upon different states of facts, or if different proofs would be required to sustain the two actions, a judgment in one is no bar to the maintenance of the other." 555 N.W.2d at 441 (quoting *Phoenix Fin. Corp. v. Iowa-Wis. Bridge Co.*, 237 Iowa 165, 176, 20 N.W.2d 457, 462 (1945)). Lemartec notes, but does not address, potential contrary authority in *Villarreal v. United Fire & Casualty Co.*, 873 N.W.2d 714, 729 (2016).

Finally, Lemartec challenges the assertion of the state district court that "Lemartec cannot maintain an action on its contractual rights under the Purchase Order after previously bringing suit on an alleged breach of the same agreement." Lemartec argues that the state district court overlooked the distinction between a "total breach" of contract, where the plaintiff sues for the entire value of the contract based on total breach, and a partial breach, where there can be multiple breaches of contract. In

support of its argument, Lemartec cites section 26, comment *g* of the Restatement (Second) of Judgments, which states,

> A judgment in an action for breach of contract does not normally preclude the plaintiff from thereafter maintaining an action for breaches of the same contract that consist of failure to render performance due after commencement of the first action.

Restatement (Second) §26 cmt. *g*, at 240. Thus, according to Lemartec, the fact that the claims in the federal court and the state court litigations both relate to the same purchase order is not dispositive if separate issues are raised.

### C. Position of ACT.

1. *Transactional approach.* Whether to apply claim preclusion turns, in part, on the definition of a "claim." ACT asserts that we have applied "the transactional approach of the Restatement." Under the Restatement (Second) of Judgments, "the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." Restatement (Second) § 24, at 196. As seen from the above passage, the question of claim turns upon the scope of the "transaction." ACT notes that Lemartec in its pleading in both cases, pled, nearly verbatim, breach of contract, breach of implied warranty of workmanlike construction, breach of implied warranty of fitness for a particular purpose, and breach of express warranty. ACT further claims that the only transaction in both cases that gives rise to the claims is the purchase order wherein ACT agreed to "perform and complete all Work required for the proper execution and completion of all Salt Conveyor Systems Supply work for the Project."

In its analysis of the scope of a transaction, ACT recognizes that the claims of Lemartec are indemnity claims. But, according to ACT, once a first action seeking indemnification is launched, the party seeking indemnify must pursue all theories of recovery at that time where there is no claim that the new theories arose subsequent to resolution of the first indemnity claim. *Arnevik v. Univ. of Minn. Bd. of Regents*, 642 N.W.2d 315, 320 (Iowa 2002) ("[O]nce [the employee] started down the path in the first action seeking indemnification from [her employer], she was required to bring all theories of recovery at that time.") Further, because Lemartec amended its complaint in the federal litigation to include the underlying claims of breach of contract, breach of warranty, etc., Lemartec was required to bring all claims arising out of the transaction.

2. *Not "materially different."* ACT next addresses the question of whether the indemnity claim in the state litigation is "materially different" from the claims raised and litigated in the federal court litigation. ACT notes that perfect identity of evidence is not required to assert claim preclusion. *See Villarreal*, 873 N.W.2d at 729; Restatement (Second) § 25, at 209–10. While ACT recognizes that Lemartec relies on a "later events" theory to avoid preclusion, ACT characterized the "later events" theory as inapposite because the claims in both cases arise out of the same obligations owed by ACT.

Further, ACT asserts that Lemartec in the federal litigation alleged a significant number of defects. Lemartec claimed in the federal litigation that the ACT's deficiencies "included, but were not limited to"

> [d]efective handrail on transfer tower, defective stairs on transfer tower, defective hopper rail car unload pit, defective rail car uploading pit, defective skirt boards, defective tripper car, defective festoon, defective gear box and head pully, defective pan feeder rail car pit, defective stops for tripper car,

defective collector chute to bucket elevator, and defective catwalk between transfer tower and salt building.

Further, ACT notes that Lemartec asserted, "ACT's numerous deficiencies in designing and manufacturing the Salt Conveyer in accordance with the Project specification drawings shows that ACT failed to follow specific plans, which supports Lemartec's implied contractual indemnity claim." But, ACT asserts that in the federal litigation it proved that the conveyor system was 100% operational after it was installed.

In response to Lemartec's argument that the case involves multiple partial breaches under section 26, comment *g* of the Restatement (Second) Judgments, ACT asserts that the notion of a partial breach applies only to a contract involving ongoing obligations such as an employment contract. ACT argues that in this case, ACT's performance under the purchase order was completed by June 2015.

3. *Timing of Lemartec's claims.* ACT addresses Lemartec's assertion that the state court litigation claims arose after the claims litigated in federal court. According to ACT, Lemartec did not limit its defect claims in the federal litigation to the installation or precompletion period. In particular, ACT notes that Lemartec argued, in order to avoid summary judgment, that "ACT shall Guarantee the work for 18 months after delivery of Equipment or 12 months after Start-up, whichever is sooner." In response, ACT argues that it put on evidence at the federal trial that the equipment was fully operational after it was installed. So ACT claims that in the federal litigation, Lemartec did raise claims related to the operation of the conveyor system.

In the alternative, ACT challenges Lemartec's assertion that the Lemartec's state court indemnity claims arose after the indemnity claims asserted in federal court. ACT notes that while the litigation between ACT

and Lemartec began as indemnity and contribution claims, Lemartec amended its pleadings in both forums in October 2017 to include nearly identical claims for breach of contract, breach of implied warranties, and breach of express warranties. ACT presses its point by noting that Lemartec's amended pleading in state court was filed one day prior to its similar amended pleading in federal court. ACT notes that the conveyor system was completed in May 2015 and turned over to Conve in June 2015, well before the October 2017 date.

ACT recognizes that serial breaches of contract may occur. Such successive contract claims arise, according to ACT, only where the contracting party fails to render performance due after the beginning of the first action. Here, according to ACT, it had no performance due after the delivery of the conveyor system to Conve in June 2015.

ACT further challenges Lemartec's effort to rely on the June 2018 date of the discovery responses served by HFCA to support its claim that the state court claims arose after the filing of the federal litigation. According to ACT, it is not the date of discovery that matters but instead the date when the act or event giving rise to the claim occurred.

4. *Rejection of bright-line rule.* ACT argues that Iowa courts should reject Lemartec's invitation to adopt a bright-line rule that claims arising after the filing of the first action are not subject to preclusion in later litigation, at least where application of the rule would be inconsistent with the transactional approach. In support of its argument, ACT cites *Pavone v. Kirk*, 807 N.W.2d 828, 830–31 (Iowa 2011). In *Pavone*, a party successful in a first contract action sought to bring a second contract action alleging a breach similar to the first that occurred after the first litigation was commenced. *Id.* ACT argues *Pavone* is determinative here.

5. *No waiver.* ACT argues that it did not waive or acquiesce in claim splitting. ACT asserts that in *Pagel*, the father brought part of his claim for his son's wrongful death in one action and the other part for his personal injuries and property in another. Similarly, according to ACT, in *Noel*, the son brought part of his claim for a declaration of rights in one action and the other part for damages in another.

Here, according to ACT, Lemartec has brought the exact same claim in both cases. As a result, ACT claims there was no claim splitting under section 26, comment *a* of the Restatement (Second) of Judgments, to which ACT needed to object.

Further, ACT claims it did, in fact, object to the expansion of claims by Lemartec through its amendment in the federal litigation. Further, in the state court action, ACT sought to amend its answer to assert a res judicata defense early in the litigation. And, according to ACT, the fact that Lemartec in its settlement with SPG in the federal case included a release of all claims between SPG and Lemartec in the state court shows that Lemartec was aware of the relationship between the two cases. Finally, ACT notes that the waiver exception to claim preclusion does not apply to issue preclusion. *See Noel*, 334 N.W.2d at 149–50.

**D. Discussion.** On the issue of claim preclusion, we have several potential arguments to consider. We conclude, however, that our approach to simultaneous litigation embraced by section 26, comment *a* of the Restatement (Second) of Judgments, and adopted in *Noel* and *Pagel*, is dispositive on the claim preclusion issue.

*Noel* and *Pagel* deal with the narrow question of how to treat simultaneous claims in different forums that arguably deal with overlapping disputes. The approach in these cases is a pragmatic one, based on the notion that in the unusual context of simultaneous litigation

involving the same subject matter, the courts and the parties are entitled to notice and an opportunity to develop a framework for the resolution of the overlapping issues.

Here, the federal litigation proceeded to judgment without any suggestion from ACT that claim preclusion might be involved. The burden is on ACT to give a timely notice under *Noel* and *Pagel* that claim preclusion might be implicated in light of the simultaneously ending state court litigation. *Clements*, 69 F.3d at 329.

A notice under *Noel and Pagel* is hardly timely when made after a judgment has been entered in the first litigation. Indeed, as stated in *Noel*, the executor did not raise potential preclusion until a judgment was obtained in the first action and then tried to interpose the judgment to preclude the second action. 334 N.W.2d at 148–49. The *Noel* court rejected this approach, noting that "decisions dealing with this situation hold that a party waives claim preclusion by failing to interpose it prior to judgment in the first case." *Id.* at 149. Further, the *Noel* court stated that the executor in that case "waived claim preclusion by failing to interpose it appropriately before judgment in the declaratory action." *Id.*

*Pagel* is consistent with the approach in *Noel*. In *Pagel*, the court considered a scenario in which a plaintiff instituted two separate actions that gave rise to potential claim splitting. The question before the court in *Pagel* was whether

> a defendant can lie back without pleading splitting, let his opponent proceed to judgment in the first action, and then amend his answer in the second action to aver that the plaintiff is foreclosed by splitting from prosecuting the second action.

186 N.W.2d at 640. The *Pagel* court noted that "[b]y waiting to interpose splitting by amendment until after judgment in the first action, defendants

placed plaintiff in an inextricable position." *Id.* at 641. The *Pagel* court found the claim-splitting issue waived. *Id.*

As a result, we hold under *Noel* and *Pagel* that ACT has waived its claim-preclusion argument. Because of our resolution of the issue based upon waiver under *Noel* and *Pagel,* we do not reach the other issues related to claim preclusion raised in this case.

**IV. Issue Preclusion.**

**A. Position of Lemartec.** Lemartec asserts that the state district court ruling took too broad an approach to what the "issue" was in the federal lawsuit. According to Lemartec, the district court in granting ACT's motion for summary judgment construed the federal judgment as precluding categorically any indemnity claims Lemartec might have based upon the purchase order with ACT.

Lemartec argues that the federal judgment is fact bound. According to Lemartec, the issue in the federal litigation was whether Lemartec was entitled to receive indemnification for SPG's claims for alleged precompletion delays and deficiencies. In support of its argument, it cites the federal court ruling stating that the issues remaining for trial were "whether either of the two remaining parties [Lemartec and/or ACT] owes money to the other for money earned but unpaid; project delays; and for additional work that was required to make the conveyor system functional." That, according to Lemartec, is a narrow issue, based on SPG's claims, and not a broad categorical question regarding whether Lemartec is entitled to indemnity from ACT for other alleged wrongs.

Lemartec notes that in the state court litigation the alleged defects did not relate to the timing, fabrication, and delivery of the conveyor's component parts. Further, there was no suggestion in the federal litigation that latent or unknown future defects would be foreclosed by a judgment.

Lemartec additionally observes that no evidence on the issue of problems in the operation of the conveyor system was presented in the federal court litigation, and therefore the question was not "actually litigated" in that forum. *Haverly*, 727 N.W.2d at 572.

Further, Lemartec asserts that indemnification was not raised in the federal litigation because the right to indemnification does not fully mature until the indemnitee's liability is fixed by settlement or judgment. *See Becker v. Cent. States Health & Life Co. of Omaha*, 431 N.W.2d 354, 357 (Iowa 1988), *overruled in part on other grounds by Johnston Equip. Corp. of Iowa v. Indus. Indem.*, 489 N.W.2d 13, 17 (Iowa 1992); *Evjen v. Brooks*, 372 N.W.2d 494, 496 (Iowa 1985). According to Lemartec, "[a] question cannot be held to have been arisen and adjudged before an issue on the subject could possibly have arisen." *Third Nat'l Bank of Louisville v. Stone*, 174 U.S. 432, 434, 19 S. Ct. 759, 760 (1899).

**B. Position of ACT.**

1. *Scope of issue litigated in federal litigation.* ACT claims that determining the scope of the issue litigated in the prior action is critical to application of issue preclusion. In making that assessment, ACT emphasizes that the fact that the opposing party raises new arguments and presents different evidence is not determinative. *See Soults Farms*, 797 N.W.2d at 104–05.

An important part of the issue preclusion analysis is identification of the elements of the claims in the prior action. In the federal litigation, ACT asserts that in order to prove its claim, ACT was required to show the terms and conditions of the contract and that it performed all the terms and conditions required under the contract. *Royal Indem. Co. v. Factory Mut. Ins.*, 786 N.W.2d 839, 846 (Iowa 2010). The federal court, according to ACT, necessarily found that it had performed all the terms and

conditions of the contract and that Lemartec had no "legal excuse" to withhold payment.

ACT asserts that in the federal action, the question of whether ACT had a duty to indemnify Lemartec was litigated and decided. In resisting summary judgment in the federal litigation, Lemartec identified provisions of its contract with ACT that gave rise to an indemnification claim. ACT points out that Lemartec amended its counterclaims in the federal litigation to include breach of contract, breach of implied warranty of fitness for a particular purpose, and breach of express warranty. In the implied warranty claim, ACT notes that Lemartec identified the litigated issues as whether ACT breached the independent duty "to provide the conveying system components in accordance with the construction drawings and specifications." With respect to the indemnity claim, ACT observes that Lemartec characterized the issue as whether "ACT breached the implied warranty of merchantability and implied warranty of fitness for a particular purpose." ACT argues that "Lemartec cannot prevail on its indemnity action because of the crucial issue of whether ACT breached the duties it owed under the Purchase Order has already been decided against Lemartec," and contends therefore that the issue of indemnity has been litigated and determined and is binding on Lemartec in the state litigation.

2. *Precompletion vs. postcompletion defects.* ACT challenges Lemartec's characterization of the federal litigation as involving precompletion defects and the state court as involving postcompletion defects. It notes, for instance, that some precompletion claims were raised in the state litigation.

ACT further notes that the alleged defects in both cases are based on the same work performed by ACT pursuant to the same purchase order.

According to ACT, the fact that HFCA filed its discovery responses in the state litigation identifying specific defects in June 2018 does not change the fact that ACT had performed all its obligations under the purchase order when the federal litigation was pending.

3. *Maturity of indemnity claim.*  On the issue of when an indemnity claim "fully matures," ACT asserts that while the right to enforce a claim of indemnity does not "accrue" until judgment against the indemnitee, the claim "comes into being . . . the instant" the acts to support it occur.  *Evjen,* 372 N.W.2d at 496–97 (quoting 18 Am. Jur. 2d *Contributions* § 46 (1965)).  In any event, as long as the issue of indemnity was raised in the first litigation, ACT argues that issue preclusion applies if the issues "in the second case involve[] issue[s] decided in the first case."

4. *Waiver.*  ACT argues that throughout Lemartec's brief to this court, Lemartec only asserts that its indemnity claims in the two actions involve different issues.  But ACT asserts that Lemartec did not argue that its other state court claims—for breach of contract and breach of various warranties—were not the same as the claims in federal litigation.  As a result, ACT argues that Lemartec has waived all claims in the state court litigation except the indemnity claim.

ACT then asks what the waiver of underlying substantive issues has to do with its unwaived indemnity claim.  According to ACT, the state district court will be bound by the federal court determination that the other substantive claims are without merit.  As a result, ACT suggests that there is no remaining substantive basis for Lemartec's indemnity claim.

**C. Discussion.**  A party asserting issue preclusion must establish four elements:

> (1) the issue in the present case must be identical, (2) the issue must have been raised and litigated in the prior action, (3) the issue must have been material and relevant to the disposition

of the prior case, and (4) the determination of the issue in the prior action must have been essential to the resulting judgment.

*Soults Farms, Inc.*, 797 N.W.2d at 104 (quoting *Fischer*, 654 N.W.2d at 547 (Iowa 2002).

We think the issue-preclusion question centers on a determination of the proper level of generality to be applied in determining the scope of an "issue" for preclusion purposes. ACT argues that the scope of the issue in the federal litigation should be broadly and categorically construed to include all contract-type issues arising out of the purchase order between ACT and Lemartec in this case. Because of ACT's categorical approach, its focuses on the similarity of the pleadings in the state and federal litigation. And, there is no doubt that Lemartec's pleadings in both cases are similar.

But there are certainly factual differences. As pointed out by Lemartec, the claims for which it seeks indemnity arise as a result of different factual scenarios. SPG's claims arose based on preinstallation problems, while HFCA's claims arose postinstallation and were based upon the alleged corrosion of the installed conveyor belt system. The main difference between ACT and Lemartec is whether the issue in this case is a categorical one relating to all claims under the purchase order or a more granular one based on the facts that give rise the dispute.

We agree with Lemartec. In the federal court litigation, Judge Wolle noted,

> Pared down to essentials, the remaining issues for trial were whether [Lemartec and/or ACT] owes money to the other for money earned but unpaid; project delays; and for additional work that was required to make the conveyor system functional.

In the state court litigation, HFCA seeks recovery for claims that arose from postinstallation defects.

While it is true that the pleadings of Lemartec in both proceedings were quite similar, Lemartec correctly points out that Iowa is a notice pleading state and, as a result, the pleadings themselves may be so general that they do not define the scope of the issues being litigated in the action. Based on our examination of the record, the issue of corrosion in the installed conveyor belt system was not "actually litigated" in the federal litigation as generally required for application of issue preclusion. *Haverly*, 727 N.W.2d at 572. The issues that were actually litigated in the federal proceeding arose from SPG's claim that it lost money because of additional expenses that arose prior to the installation of the conveyor belt.

We do not think there is a generally applicable rule that there can be only one litigated dispute under a contract. A contract may impose a number of obligations on a contracting party, and breaches of the contract may occur at different times and under different circumstances. For example, in *Storey Construction, Inc. v. Hanks*, 224 P.3d 468, 471 (Idaho 2009), an owner sued a contractor upon completion of a home and lost in arbitration. Subsequently, the owner discovered water entering the house arising from other defects. *Id.* The *Hanks* court noted, "There can be more than one construction defect in a construction project. Under the parties' contract, there can also be more than one claim 'arising out of or related to' the parties' construction contract." *Id.* at 475.

We conclude similar reasoning is applicable here. The fact that there has been prior litigation based on breach of contract does not mean that there can be no subsequent action where the underlying claims arose

at a different time based on different breaches. As a result, the district court erred in granting summary judgment based on issue preclusion.[2]

## V. Conclusion.

For the above reasons, we conclude that the order of the district court granting ACT summary judgment should be reversed and the case remanded to the district court for further proceedings.

**REVERSED AND REMANDED WITH DIRECTIONS.**

All justices concur except Oxley, J., who takes no part.

---

[2]ACT suggests that Lemartec waived dismissal of some of claims III–VI by arguing on appeal only that the indemnity claims involve separate issues. All of Lemartec's claims, however, fall under the umbrella of indemnity claims, regardless of the underlying legal theory. The district court referred to indemnity counts in this case. We conclude that there is no waiver problem here.